COMMANDER'S PALACE PARK ASSO-CIATES, Plaintiff-Appellant,

v.

GIRARD AND PASTEL CORPORATION et al., Defendants,

O. R. Van Ness and Commander's Palace Mobile Home Park, Defendants-Appellees.

No. 76–2677.

United States Court of Appeals, Fifth Circuit.

May 10, 1978.

Jack McClendon, Lubbock, Tex., Floyd D. Holder, Jr., Canadian, Tex., for plaintiff-appellant.

James H. Milam, Lubbock, Tex., for Commander's Palace Mobile Home Park.

Hugh E. McGee, Jr., Bert L. Clardy, Houston, Tex., for Van Ness.

Before WISDOM, GODBOLD and CLARK, Circuit Judges.

GODBOLD, Circuit Judge:

In this case the disappointed purchaser of a mobile home park claims that the sale of the park was the sale of a security within the Securities Exchange Act of 1934. We hold that it was not and thus affirm the district court's dismissal of plaintiff's suit alleging violations of the federal securities laws for want of subject matter jurisdiction.

## I. Facts

A general partnership owned the mobile home park involved in this case. This partnership ("seller") sold the park to Commander's Palace Park Associates ("Park Associates") in exchange for $57,000 in cash and a promissory note for $1,407,500, secured by a mortgage on the property. On the same day Park Associates contracted with O. R. Van Ness, one of the seller's general partners, for what it called the day-to-day management of the park. Park Associates was to pay Van Ness $26,000 plus an incentive for renting over 90% of the sites in the park.

A few days earlier Park Associates had contracted with Girard and Pastel Corporation ("GPC") for what it called the overall management of the park. Under the terms of this agreement GPC agreed to pay the promissory note to the seller, amounts due under the Van Ness management contract, as well as all taxes, utility charges, insurance premiums and other expenses incurred by the park. Park Associates agreed to establish $200,000 as an operating account, to pay a non-refundable $45,000 fee, and to execute a promissory note to GPC for $1,590,000, secured by a junior mortgage on the property. Under this note Park Associates would pay GPC about $225,000 each year. In addition, GPC could keep all profits generated by the park after it had paid Park Associates, in monthly installments, about $50,000 each year (called by the contract a "guaranteed payment"). This arrangement was apparently intended to allow Park Associates to make one payment, which would flow through GPC to pay the seller and the day-to-day manager and to cover all other expenses.

The entire transaction can be restated simply. From its point of view Park Associates would purchase the park by making a small down payment and undertaking its note to GPC. At the same time the park would be leased to GPC for a fixed return each year.

As it turned out the park failed to generate any profit, and the operating account was exhausted within five months. Park Associates brought suit in the district court, alleging violations of the securities laws. The district court held that Park Associates had not purchased an investment contract and, therefore, dismissed the suit for want of jurisdiction.

## II. Did Park Associates purchase an investment contract?

The sale of the park was not the sale of an investment contract because the seller, in offering the park for sale, did not lead

the purchaser to expect that management arranged by the seller would provide the sole or the crucial efforts needed to produce profits. Park Associates has failed to allege or show that the seller had anything to do with the GPC management contract. From the pleadings and the affidavits it appears simply that Park Associates arranged this contract on its own. One can infer that the Van Ness management contract was part of a package offered to Park Associates. The contract was executed on the same day that the park was sold, and Van Ness was the only one of the seller's partners to sign the agreement of purchase and sale. The management responsibilities undertaken by Van Ness, however, were insufficient for the sale of the park to have been the sale of an investment contract. The leading case of *SEC v. Howey*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), defined an investment contract as "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *Id.* at 298–99, 66 S.Ct. at 1103, 90 L.Ed. at 1249. In cases dealing with pyramid sales schemes or referral sales agreements, we have modified this test to allow that the promoter or the third party need expend not the sole efforts, but only the crucial efforts, to produce profits. *SEC v. Koscot Interplanetary, Inc.*, 497 F.2d 473 (CA5, 1974); *Bell v. Health-Mor, Inc.*, 549 F.2d 342, 345 n.3 (CA5, 1977). We need not determine whether an investment contract consisting of managed property requires of the manager the sole efforts or only the crucial efforts needed to provide profits because the contract in this case meets neither requirement. Under the day-to-day management contract, Van Ness did not expend the sole efforts needed to produce income from the park. Further, although Van Ness undertook substantial responsibilities, it cannot be said that his efforts alone were the crucial efforts. The very existence of the GPC contract, which purportedly involved overall management, suggests that this is so, and an examination of each contract supports this conclusion. Van Ness's authority was limited: any expense item over $200 had to be approved by either Park Associates or GPC. GPC was responsible for the actual payment of expenses, taxes, and insurance, and for the procurement of licenses and permits. GPC also agreed to keep the park in good repair and to use its best efforts to lease all individual spaces available for lease. The tenor of its contract as a whole suggests that GPC undertook considerable management responsibilities, certainly enough so that it could not be said that Van Ness alone would provide the crucial efforts.

Although there may be other reasons why the sale of the park was not the sale of an investment contract, it is sufficient to dispose of this case that the seller, in offering the park for sale, did not lead the purchaser to expect that management arranged by the seller would provide the sole or the crucial efforts needed to produce profits.

Attached to Park Associates' complaint were copies of the agreement between Park Associates and Commander's Palace for the purchase of the property, the day-to-day management contract between Park Associates and Van Ness, the overall management agreement between Park Associates and GPC, and the mortgage to GPC. A single reference in the mortgage suggests or hints that GPC may have held an option to purchase the property and transferred it to Park Associates. Park Associates, however, maintained in the district court simply that it purchased the property from Commander's Palace. On appeal Park Associates did not even name or treat GPC as a party to the appeal and asked no relief with respect to GPC, although the district court had entered a final judgment as to all parties. Thus we regard the seller to be Commander's Palace, as Park Associates throughout the case has maintained.

Accordingly, the district court's dismissal of the action for want of jurisdiction is AFFIRMED.