James W. FRAZIER, Plaintiff,

v.

Dean A. MANSON, Defendant.

Civ. A. No. CA 3–79–1458–D.

United States District Court,
N. D. Texas,
Dallas Division.

Jan. 31, 1980.

**450**

Khent Rowton, Kimberly C. Hampton, Gilliland, Cates & Flagg, Dallas, Tex., for plaintiff.

Patrick McManemin, Winstead, McGuire, Sechrest & Trimble, Dallas, Tex., for defendant.

## OPINION

ROBERT M. HILL, District Judge.

Came on for consideration before the Court the motion to dismiss for lack of subject matter jurisdiction and the motion to dismiss for failure to state a claim upon which relief can be granted of defendant Dean A. Manson ("Manson") and the motion for leave to amend of plaintiff James W. Frazier ("Frazier"). The Court, having advised the parties of its intention to treat Manson's motions as a motion for summary judgment pursuant to Fed.R.Civ.P. 56 more than ten days ago and having heard testimony and the argument of counsel, is of the opinion that Manson's motion for summary . judgment should be granted. Furthermore, the Court having thoroughly examined and considered Frazier's motion for leave to amend, is of the opinion that Frazier's motion for leave to amend should be denied.

Frazier, a partner in the general partnership Manson-Frazier Companies ("MFC"), seeks to assert causes of action pursuant to § 10(b) of the Securities Exchange Act of 1934 ("section 10(b)"), 15 U.S.C. § 78j(b) (1971),[1] rule 10b–5, 17 C.F.R. § 240.10b–5

---

1. 15 U.S.C. § 78j (1971) provides in part:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails . . .

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contraven-

(1979),[2] and various state laws [3] against Manson, the other partner in MFC. In order to support his claim under section 10(b) and rule 10b–5, Frazier alleges that he purchased securities when he received limited partnership interests in five limited partnerships, Montfort Luxury Duplexes, Ltd., 6162 Partners, Ltd., 2877 Partners, Ltd., Trinity Warehouse Partners, Ltd., and the Riverview Apartments, Ltd. ("limited partnerships"), in which MFC was the general partner. Additionally, Frazier argues that he sold securities when Manson, MFC, or the limited partnerships "issued" limited partnership interests to third-party investors.[4] The Court, however, has concluded that Frazier's limited partnership interests are not "securities." Moreover, the Court has concluded that Frazier has no standing to claim that either he or MFC or any of the limited partnerships was a "forced seller" of securities.

 In an action brought under section 10(b), "the term 'security' means any . . . stock, treasury stock, . . . certificate of interest or participation in any profit-sharing arrangement . . ., investment contract, . . . or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing . . . ." 15 U.S.C. § 78c(a)(10) (1971). The Court is mindful that the concept of a "security" is a "flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *Tcherepnin v. Knight*, 389 U.S. 332, 338, 88 S.Ct. 548, 554, 19 L.Ed.2d 564 (1967). Furthermore, the Court is cognizant that the broad judicial definition of the term "investment contract" as

a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise

*Securities Exchange Commission v. W. J. Howey Co.*, 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946); *see also, Cameron v. Outdoor Resorts of America, Inc.*, 608 F.2d 187 (5th Cir. Dec. 13, 1979); *Commander's Palace Park Associates v. Girard and Pastel Corporation*, 572 F.2d 1084 (5th Cir. 1978); *Woodward v. Metro Bank*, 522 F.2d 84 (5th Cir. 1975); *Securities and Exchange Commission v. Koscot Interplanetary, Inc.*, 497 F.2d 473 (5th Cir. 1974), generally encompasses limited partnership interests. *Hirsch v. duPont*, 396 F.Supp. 1214 (S.D.N.Y.1975), aff'd, 553 F.2d 750 (2d Cir. 1977); *New York Stock Exchange, Inc. v. Sloan*, 394 F.Supp. 1303 (S.D.N.Y.1975).

tion of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

**2.** Rule 10b–5 provides in part:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(1) to employ any device, scheme or artifice to defraud,

(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

**3.** Frazier seeks both an accounting pursuant to Tex.Rev.Civ.Stat.Ann. art. 6132b(22) (1970) and damages for common law fraud and for violations of Tex.Bus. & Comm.Code § 27.01 (1968) and Tex.Rev.Civ.Stat.Ann. art. 581 (1964 and Supp.1979).

**4.** At oral argument, counsel for Frazier conceded that Frazier's partnership interest in MFC did not constitute a "security" for the purposes of section 10(b) and rule 10b–5. *See generally N.Y. Stock Exch., Inc. v. Sloan*, 394 F.Supp. 1303 (S.D.N.Y.1975); *but cf. Pawgan v. Silverstein*, 265 F.Supp. 898 (S.D.N.Y.1967) (general partnership interest may be "security" when general partner-plaintiff was effectively excluded from partnership's daily operations).

Frazier's limited partnership interests satisfy the first two prongs of the *Howey* "investment contract" test: he "invested money"[5] in a common enterprise with the expectation of receiving profits. However, Frazier did not expect the limited partnerships' profits to be derived "solely from the efforts of others." *Howey, supra* at 301, 66 S.Ct. at 1104. The Court, construing the requirement that the enterprise's profits be derived "solely from the efforts of others" flexibly rather than literally, in light of the remedial purposes of section 10(b), *Commander's Palace Park Associates, supra; Koscot Interplanetary, Inc., supra,* must conclude that Manson "alone" did not provide the efforts that were crucial to the limited partnerships' profitability, *Commander's Palace Park Associates, supra,* at 1086, and that Frazier's managerial services constituted much more than "nominal [or] menial" efforts that affected the limited partnerships' success only slightly or indirectly. *Koscot Interplanetary, Inc., supra* at 480–81.[6] Even for the purposes of a motion for summary judgment, the Court cannot segregate Frazier's limited partnership interests from his status as a partner in MFC. Frazier was not merely a passive investor in the limited partnership; he was not merely an "outsider who had capital desired by the [limited partnerships]." *Hirsch v. duPont, supra,* 396 F.Supp. at 1228, *quoting, Laupheimer v. McDonnell & Co., Inc.,* 500 F.2d 21 (2d Cir. 1974). Rather, he had the right to participate actively in the daily business operations of both MFC and the limited partnerships. His managerial rights negate the possibility that his limited partnership interests were securities.

The Court is similarly unconvinced that Frazier may bring an action under section 10(b) as a "forced seller" of securities. *Cf. Bolger v. Laventhol, Krekstein, Horwath & Horwath,* 381 F.Supp. 260 (S.D. N.Y.1974) (limited partners could not sue general partners under section 10(b) and rule 10b–5 by virtue of general partners' sale of securities from limited partnership's portfolio). Moreover, the Court rules, as a matter of law, that Frazier has no standing to bring a "derivative" action under section 10(b) and rule 10b–5 on behalf of MFC or the limited partnerships. Frazier's attempt to transplant the principles of corporate law into the field of partnership law is unsupported by any precedent and unsupportable.[7] As a partner in the limited partner-

5. "[A] person's 'investment,' in order to meet the definition of an investment contract, . . . [need not] take the form of cash only rather than of goods and services." *International Brotherhood of Teamsters v. Daniel,* 439 U.S. 551, 99 S.Ct. 790, 797, n. 12, 58 L.Ed.2d 808, 817 n. 12 (1979). Frazier did not testify that he invested money in any of the limited partnerships; rather, he received his limited partnership interests as compensation for the managerial services that he performed for MFC, the purported general partner in all of the limited partnerships.

6. Frazier testified that his duties as a partner in MFC, the general partner of the limited partnerships, consisted of managing the properties which the limited partnerships acquired. He acknowledged that he was to pay the limited partnerships' bills and to make the partnership properties profitable and that his efforts would determine whether the limited partnership succeeded.

7. In *Dasho v. Susquehanna Corp.,* the United States Court of Appeals for the Seventh Circuit explained the rationale of a derivative action under section 10(b) and rule 10b–5:

The perpetrators of the alleged fraud [Susquehanna's purchase of its own stock at an allegedly inflated price] included several of the directors of Susquehanna. Since the challenged transaction did not require shareholder approval, the directors would normally speak for the corporation in connection with the matter. To the extent that the directors were competent to act for the corporation, it therefore would follow that Susquehanna was the victim of its own fraud.

This theoretical dilemma has been met in other cases by recognizing that defendant directors may deceive disinterested members of the board, and through them the corporation.

461 F.2d 11, 24 (7th Cir.), *cert. denied,* 408 U.S. 925, 92 S.Ct. 2496, 33 L.Ed.2d 336 (1972). Frazier's attempt to cast himself as a disinterested general partner must fail. Despite Frazier's argument that Texas partnership law tends to characterize a partnership as a separate "entity" rather than as an aggregate of the partners, his attempt to construct a "derivative" action on behalf of the partnership raises insurmountable conceptual barriers. For example, it is well-established that a limited partnership acts

ships' general partner as well as a limited partner, Frazier could neither fairly nor adequately represent the other limited partners; his mere attempt to bring a "derivative" action raises the spectre of conflicts of interest and potentially exposes him to enormous personal liability. *See* Tex.Rev. Civ.Stat.Ann. arts. 6132b(14) and (15) (1970). Thus, the Court has concluded that there is no genuine issue of material fact and that judgment for Manson is appropriate as a matter of law because Frazier neither purchased nor sold securities.[8]

■■■ Moreover, the Court has concluded that Frazier's motion for leave to amend should be denied because neither MFC nor any of the limited partnerships has standing to bring a "derivative" cause of action against Manson under section 10(b) and rule 10b–5. In a true derivative action under rule 10b–5, a corporation does not sue in its own name. Rather, a stockholder who will fairly and adequately represent the interests of all similarly situated stockholders sues the corporation. In this case, none of the parties-plaintiff listed in Frazier's proposed amended complaint will fairly and adequately represent all of the limited partners. Furthermore, the Court could not allow counsel for Frazier to represent MFC or the limited partnerships in light of the obvious conflicts of interest between Frazier and Manson and between Frazier and the other limited partners. Therefore, as the Court is of the opinion that none of the parties-plaintiff listed in Frazier's proposed amended complaint has standing to sue Manson under rule 10b–5, *cf. Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 728–37 and 748–49, 95 S.Ct. 1917, 1921–1926, 1931–1932, 44 L.Ed.2d 539 (judicially created private right of action under section 10(b) and rule 10b–5 should be construed more restrictively than express statutory private right of action), Frazier's motion for leave to amend should be denied.

only through its general partner, *see Tomlin v. Ceres Corp.*, 507 F.2d 642 (5th Cir. 1975); thus, it is arguable that MFC "issued" Frazier his limited partnership interests and that MFC and Frazier himself are the proper parties-defendant in a derivative action brought on behalf of the limited partnerships.

Accordingly, Manson's motion for summary judgment should be granted against Frazier, and Frazier's motion for leave to amend should be denied. Therefore, this lawsuit should be dismissed in its entirety. The parties shall advise the court within five days if they can agree with Richard Massey, the court-appointed accountant, on the reasonable fee to be paid for his services in this case. If an agreement cannot be reached, then a hearing will be held before the court on the 11th day of February, 1980, at 1:30 p. m. to determine the amount of fee to be awarded Richard Massey. The clerk of this court shall forward a copy of this opinion to the parties and Richard Massey.

8. The availability of an effective remedy under state law softens the potentially harsh consequences of the Court's conclusion that Frazier has asserted no cause of action under section 10(b) and rule 10b–5. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 738 n. 9, 95 S.Ct. 1917, 1927 n. 9, 44 L.Ed.2d 539 (1975).