**James V. LOPEZ, et al., Plaintiffs,**

v.

**Charles D. RICHARDS, et al., Defendants.**

**James A. PEARMAN and Fred H.T. Wong, Cross-Claimants and Third Party Plaintiffs,**

v.

**George MITCHELL, Cross-Defendant,**

and

**Oscar B. Labarre, Third Party Defendant.**

**Civ. A. No. W81–0101(B).**

United States District Court, S.D. Mississippi, W.D.

Sept. 21, 1984.

**490**

John W. Prewitt, H.M. Yoste, Jr., Bodron & Yoste, Vicksburg, Miss., Charles E. Shivel, Jr., Stoll, Keenon & Park, Lexington, Ky., William M. Bost, Jr., Gerald E. Braddock, Ellis, Braddock & Bost, Vicksburg, Miss., Jerome B. Steen and Whitman B. Johnson, III, Steen, Reynolds, Dalehite & Currie, Jackson, Miss., George B. Mitchell, Vicksburg, Miss., for defendant.

Robert M. Randolph, Law, Snakard & Gambill, Fort Worth, Tex., Landman Teller, Jr., Teller, Chaney & Rector, Vicksburg, Miss., for plaintiffs.

BARBOUR, District Judge.

### ORDER GRANTING MOTION TO DISMISS AS TO SECURITIES ACT CLAIMS AND OVERRULING MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT AS TO REMAINING CLAIMS

This matter is before the Court on the Motion to Dismiss, or for Summary Judgment filed by the Defendants, James A. Pearman and Fred H.T. Wong. The grounds for this Motion are basically fourfold. First, the Defendants argue that the Plaintiff has failed to state a claim for relief under 18 U.S.C. Section 1962 (Supp. 1983) (RICO). Second, the Defendants argue that the Plaintiff has failed to state a claim for relief under the Federal Securities Acts, 15 U.S.C. Sections 77a. et seq. & 15 U.S.C.A. § 78a et seq. (1981). Third, the Defendants argue that the Court lacks personal jurisdiction over them. Fourth, the Defendants argue that the Plaintiff lacks standing to sue and that the case is governed by the law of Bermuda. For reasons to be set out hereinafter, the Court concludes that the Complaint fails to state a claim upon which relief can be granted as to Securities Act violations but that jurisdiction exists and that the allegations contained in the Plaintiff's Complaint are sufficient to withstand Defendants' Motion to Dismiss or for Summary Judgment as to the remaining claims.

### I. RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT CLAIM

Defendants argue that the Complaint fails to allege a nexus between their activities and organized crime, citing *Waterman Steamship Corp. v. Avondale Shipyards, Inc.*, 527 F.Supp. 256 (E.D.La.1981). The Defendants further argue that the Complaint fails to allege the necessary elements of a RICO cause of action. The Fifth Cir-

cuit has recently held that a civil RICO plaintiff need not "allege or prove that its injury was caused by the operation of organized crime". *Alcorn County, Mississippi v. U.S. Interstate Supplies,* 731 F.2d 1160, 1167 (5th Cir.1984) (*citing Owl Construction Co., Inc. v. Ronald Adams Contractor, Inc.,* 727 F.2d 540 (5th Cir.1984) and specifically declining to follow *Waterman Steamship*). The Fifth Circuit had previously held that a nexus to organized crime was not necessary for criminal RICO prosecutions. *United States v. Unioil, Inc.,* 646 F.2d 946 (5th Cir.1981), *cert. denied,* 455 U.S. 908, 102 S.Ct. 1254, 71 L.Ed.2d 446 (1982). The rule that a nexus to organized crime is not necessary for a civil RICO complaint seems to be widely, although recently, accepted. *Alcorn County* at 1167, n. 10 (*citing Moss v. Morgan Stanley, Inc.,* 719 F.2d 5 (2d Cir.1983); *Bunker Ramo Corp. v. United Business Forms, Inc.,* 713 F.2d 1272 (7th Cir.1983); *Bennett v. Berg,* 685 F.2d 1053 (8th Cir. 1982) *aff'd,* 710 F.2d 1361 (8th Cir.) (en banc), *cert. denied,* —— U.S. ——, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983)).

▮ There are five elements to a RICO cause of action. First, there must be a pattern of "racketeering activity". The Complaint alleges that Pearman, Wong and Mitchell engaged in fraud in their dealings with the Plaintiff in soliciting his investment in an option contract for the purchase of 529,000 acres of land in Tennessee. The Complaint alleges that the Defendants engaged in active misrepresentation and withheld material information from the Plaintiff in the sale of this interest to him. 18 U.S.C. Section 1961(1)(D) states that a RICO cause of action may be founded on mail fraud under 18 U.S.C. Section 1341 and wire fraud under 18 U.S.C. Section 1343. The Complaint also alleges that, in furthering their fraudulent scheme, the Defendants made use of the mail to transmit information concerning their scheme in violation of 18 U.S.C. Section 1341 and caused the Plaintiff's $100,000.00 investment to be wired from Bermuda to Vicksburg, Mississippi, in violation of 18 U.S.C. Section 1343. These allegations are sufficient to allege a

RICO cause of action. *See, e.g., United States v. Green,* 494 F.2d 820, 823–24 (5th Cir.1974), *cert. denied,* 419 U.S. 1004, 95 S.Ct. 325, 42 L.Ed.2d 280 (1974); *United States v. Mandell,* 591 F.2d 1347, 1361 (4th Cir.1979), *cert. denied,* 445 U.S. 1961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980). Second, the Defendants must engage in a *pattern* of racketeering activity. This is defined in 18 U.S.C. Section 1961(5) as at least two acts within ten years of one another. The Complaint alleges that Pearman and Mitchell committed mail fraud by mailing fraudulent investment information and the investment contract itself, respectively, and that Pearman engaged in wire fraud by causing the Plaintiff's $100,000.00 investment to be wired to Vicksburg, Mississippi. These allegations sufficiently describe a "pattern" under the RICO statutes. *U.S. v. Starnes,* 644 F.2d 673 (7th Cir.), *cert. denied,* 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 101 (1981) (Travelling from Indiana to Illinois to set fire, setting fire and using mails to defraud insurer constitutes 3 separate acts of racketeering sufficient to establish a "pattern" of racketeering activity.) Third, there must be an "enterprise" under 18 U.S.C. Section 1961(4). The Complaint alleges that Pearman, Wong, their corporation "Aries", and Mitchell acted together in numerous schemes involving trading in "a wide variety of commodities on an international scale, including oil, munitions, war planes, cigarettes, factories, liquor, and missiles, without regard to the nationality of the seller or purchaser and without regard to the morality or legality of the transaction." (Complaint para. 26). The Plaintiff alleges that the fraud involved in this lawsuit is but a particular manifestation of the Defendants' global illegal activities. *U.S. v. Provenzano,* 620 F.2d 985 (3d Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129 (1980) (The enterprise can be formed for the sole purpose of engaging in the illegal racketeering activities or may be tangential to them). Fourth, the activities must affect interstate commerce. The interstate, and even international implications raised by

the allegations in this Complaint can fairly be said to affect interstate commerce. In any event, this is a factual issue to be submitted to the jury. *See, e.g., United States v. Malatesta*, 583 F.2d 748, 754 (5th Cir.1978), *aff'd on rehearing en banc*, 590 F.2d 1379 (5th Cir.), *cert. denied*, 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979). Fifth, there must be an injury to the plaintiff. The Complaint alleges injuries flowing from the wrongful acts asserted against the Defendants and is sufficient to state a cause of action. *See, e.g., Bennett v. Berg*, 685 F.2d 1053 (8th Cir.1982).

■ In summary, the Complaint alleges widespread activities on the part of the Defendants in furtherance of their scheme to defraud the Plaintiff and sufficiently states a claim for relief under the Racketeer Influenced and Corrupt Organizations Act.

## II. FEDERAL SECURITIES ACTS CLAIMS

■ The Defendants advance several arguments in support of their Motion to Dismiss for failure to state a claim for relief under the Federal Securities Acts of 1933 and 1934 but the Court's determination of the threshold issue of whether the option contract is a "security" obviates the necessity of ruling on the remainder of the defendant's contentions. First, they argue that the ten percent interest in the option to purchase 529,000 acres of land in Tennessee was simply a land sale contract, not dependent upon any future development or management of the land by the Defendant for profit to be incurred. The Defendants argue that under United States security laws this cannot be considered a security. The Defendants argue, quite correctly, that if the investment contract is not a security, then there is no cause of action under the federal securities laws. Under the allegations of the Complaint, the profit to be realized was from the activities of the Defendants in finding a purchaser from a group of individuals allegedly on the verge of buying the land, at a price above the option price, within the 90-day option period.

■ The Court has been cited to no authority by the parties and has been unable to find any on its own for direction as to whether the sale of a land purchase option, without any development or management of the property by the defendants anticipated, constitutes an "investment contract" and hence a security under 15 U.S.C. §§ 77b(1) and 78c(a)(10). The Court is guided however by numerous decisions holding that land sale contracts are generally outside the scope of the federal securities laws. *See, e.g., Westchester Corporation v. Peat, Marwick, Mitchell & Company*, 626 F.2d 1212 (5th Cir.1980); *Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036 (10th Cir.1980); *United Sportfishers v. Buffo*, 597 F.2d 658 (9th Cir.1978); *Commander's Palace Park Associates v. Girard and Pastel Corporation*, 572 F.2d 1084 (5th Cir.1978); *McCown v. Heidler*, 527 F.2d 204 (10th Cir.1975); *SEC v. Koscot Interplanetary, Inc.*, 497 F.2d 473 (5th Cir.1974).

■ Additionally, the Court finds that the fact that the contract at issue was an "option" does not bring it within the parameters of the federal securities laws. *See, e.g., Moody v. Bache & Co., Inc.*, 570 F.2d 523 (5th Cir.1978); *Glazer v. National Commodity Research and Statistical Service, Inc.*, 547 F.2d 392 (7th Cir.1977); *McCurnin v. Kohlmeyer & Co.*, 340 F.Supp. 1338 (E.D.La.1972), *aff'd per curiam*, 477 F.2d 113 (5th Cir.1973).

The Court distinguishes the cases relied upon by the Plaintiff, *SEC v. W.J. Howey Company*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946) and *United Housing Foundation v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975) because both of those cases involved extensive *management* by the defendants of the property the plaintiffs had invested in. The Court is unconvinced that Congress intended to bring within the ambit of the federal securities laws the type of activity involved in this action: a single investment in a venture to buy an option on a piece of

property and sell it to a third party for a profit. To hold otherwise would be to bring every real estate joint venture, limited partnership or multi-party transaction within the regulations of the federal securities laws. This the Court is unwilling to do, absent a clear indication that such was the intention of Congress.

The Court concludes that the investment at issue in this case was not a "security" under the federal securities laws and hence the Complaint fails to state a securities claim upon which relief can be granted.

### III. LACK OF PERSONAL JURISDICTION

■ The Defendants allege that there has been insufficient contact with the United States for personal jurisdiction to attach to them under the doctrines of *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) which requires that "there [must] be some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum's state, thus invoking the benefits and protections of its laws." *Id.* at 253, 78 S.Ct. at 1240. Under the allegations of the Complaint, numerous activities occurred, not only within the United States, but within the State of Mississippi, to confer jurisdiction over the Defendants. In addition to the various trips, telephone calls and mailings to and within the United States, the Complaint alleges that the investment contract was drafted in Vicksburg, Mississippi, and the Plaintiff's money was wired from Bermuda to Vicksburg, Mississippi. The Complaint further alleges that the Defendant, Mitchell, had his residence and base of operations in Vicksburg, Mississippi. Under 18 U.S.C. Section 1965(a), jurisdiction is proper in any district where any defendant "resides, is found, has an agent, or transacts his affairs." The Complaint alleges that many of the steps in the fraudulent scheme were accomplished in Mississippi, including the final step of the scheme wherein the Plaintiff's funds were delivered to the Defendants. The Complaint also alleges that one of the Defendants, Mitchell, an alleged partner or agent of Pearman and Wong, was "found" in Mississippi, so as to confer jurisdiction under Section 1965.

### IV. STANDING AND GOVERNING LAW

■ In the nature of an attack upon Plaintiff's standing to file this lawsuit, the Defendants argue that the assignment of the instant cause of action from the Lobo trust and Allison properties constitutes the assignment of a "bare right to litigate" and was invalid so that the Plaintiff lacks standing to file this lawsuit. The Court is of the opinion that there is no evidence to indicate that this assignment was fraudulently done to obtain jurisdiction and that since the assignments were of all of the assets of the assignors and not simply assignments of a right to action, that they are sufficient to confer standing upon the Plaintiff.

■ Finally, the Defendants argue that Bermuda law governs because the Lobo trust recited that it would be governed by Bermuda law, and further that under the "center of gravity" test the governing law should be Bermuda law. The Court is of the opinion that this lawsuit does not involve a dispute over the Bermuda trust but rather involves alleged fraud and RICO violations in which the principle actors are the Defendants and the Plaintiff, James Lopez. Further, the Court is of the opinion that sufficient contacts with the United States, and with the State of Mississippi in particular, have been alleged to justify federal question jurisdiction under 28 U.S.C. Section 1331. In addition, due to the complete diversity of the parties involved, pursuant to 28 U.S.C. Section 1332, the Court is of the opinion that Mississippi law will apply to the Plaintiff's common law breach of contract, conspiracy and fraud claims. *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

## CONCLUSION

The Court is of the opinion that the investment contract at issue is not a "security" as defined by the federal securities laws and therefore the Complaint fails to state a claim upon which relief can be granted under the Securities Acts of 1933 and 1934.

The Court is of the opinion that the allegations contained in the Complaint sufficiently state claims for relief based upon the Federal RICO statutes and common law fraud, conspiracy and breach of contract and that the Court has both subject matter and personal jurisdiction in this cause.

The Court is further of the opinion that there are genuine issues of material fact which preclude summary judgment.

ACCORDINGLY, IT IS HEREBY ORDERED AND ADJUDGED that the Motion to Dismiss or for Summary Judgment of the Defendants, James A. Pearman and Fred H.T. Wong is granted as to the Securities Act claims and is denied in all other respects.