Bill PERSON et al., Appellants,

v.

Charles G. LATHAM, Appellee.

No. 8176.

Court of Civil Appeals of Texas, Beaumont.

May 17, 1979.

Rehearing Denied June 7, 1979.

St. John Garwood, Jr., Houston, for appellants.

Charles A. Moore, Dwight E. Vorpahl, Houston, for appellee.

KEITH, Justice.

Plaintiffs below appeal from a judgment which did not grant them the relief to which they claim to be entitled to receive under the pleadings, evidence, and findings of the jury. Their claims arose out of alleged fraudulent misrepresentations relating to the sale of several lots in two subdivisions. The appeal is upon six points of error raising both factual and legal questions which we must discuss. However, we will condense, as much as possible, the tremendous record presented.[1]

Two brothers, Bill Person and Claude Person, brought suit against several defendants claiming that a salesman for the owners and developers, C. G. Latham, made false and fraudulent representations to induce them to purchase lots in two subdivisions in Montgomery County. We quote in the margin plaintiffs' pleadings describing a part of the scheme used.[2]

---

1. The transcript contains more than five hundred pages; the statement of facts takes up more than eighteen hundred pages; and, there are more than one hundred fifty original exhibits. To compound the difficulties encountered in a record of such magnitude, appellee has not favored us with a brief answering any of the contentions brought forward.

2. "The scheme and the plain, design and conspiracy also was for the purpose (among others) of tricking Plaintiffs, as buyers who did not want to purchase lots for themselves, into

Our record shows, conclusively, that the defendant Latham, by means of false and fraudulent representations, persuaded the plaintiffs, Bill and Claude Person, to invest in certain lots on Lake Conroe, and the jury so found. Bill Person secured a judgment for his damages as found by the jury, in the amount of $19,000 plus $20,000 in exemplary damages. Because of a plea of res judicata, to be discussed hereinafter, Claude Person was denied a recovery.[3]

As to Bill Person, the question presented is whether his recovery of actual damages should be trebled under the provisions of the Defective Trade Practices-Consumer Protection Act, *Tex.Bus. & Comm.Code Ann. §§ 17.41, et seq. (Supp.1978–79),* specifically *§ 17.45(1) and (2),*[4] and, if so, may he recover exemplary damages in addition to the mandatory trebling of the damages under the Act. We overrule the contentions so advanced for the reasons now to be stated.

It is clear from the reading of the record that Bill Person was a willing and gullible victim of Latham's false representations. He agreed to purchase his lots on the representation that a "Mrs. Gigglia" would pay double his cost before any monthly installments matured. Of course, there was no "Mrs. Gigglia" and the jury so found. It fixed Bill's damages at the amount of the profit he would have realized had there been a Mrs. Gigglia and she had performed

as Latham had promised. Bill's argument is to the effect that when he purchased the lots under these circumstances, he purchased Latham's services in selling the lots to Mrs. Gigglia. In so doing, he overlooks the limitation upon the definition of "goods" as defined in the statute. Under Bill's own testimony, he did not purchase such lots for use, but to become a link in a chain designed to fleece the mythical Mrs. Gigglia of her funds.

 Texas follows the rule that statutes in derogation of the common law are not strictly construed; but, if the statute creates a liability unknown to the common law, or deprives a person of a common law right, the statute will not be extended beyond its plain meaning or applied to cases not clearly within its purview. And, since the legislature did not specifically define the word "use", its ordinary meaning will be applied. *Satterfield v. Satterfield,* 448 S.W.2d 456, 459 (Tex.1969).

Under the clear rules enunciated in *Satterfield,* supra, we decline to permit one conspirator to recover treble damages against his co-conspirator in a scheme to defraud a third person. Instead, we will apply the usual rules to the present prevailing facts.

*Section 2.01* of the Code Construction Act, *Tex.Rev.Civ.Stat.Ann. art. 5429b–2 (Supp.1978–79),*[5] is in accord with the rule

---

thinking they could resell the lots for a profit, and then covering up Defendants' frauds by various artifices and other dishonest maneuvers. . . . Essentially, these cover-up schemes involved at least two methods of operation. One method was to ask Plaintiffs to answer a questionnaire after a sale was completed, which asked if misrepresentations had been made. However, in each case Defendants knew (or should have known) that Plaintiffs had been fraudulently induced by Defendant, Latham, to answer that nothing had been misrepresented. Another method was to snare Plaintiffs, as buyers, into helping Defendant Latham locate still other buyers for a 'referral fee', and then later falsely claim that the 'referral fee' was improperly paid. Then, when Plaintiffs later complained that their lots hadn't been resold, these phony defenses (and others just as phony) would be thrown in their faces

by Wilkerson and Bailey [two other defendants]."

**3.** Subsequent to the entry of the judgment below, plaintiffs settled their controversies with all defendants except Latham who is our sole appellee; and, he has not favored us with a brief.

**4.** *§ 17.45(1)* of the amended Act reads:
 " 'Goods' means tangible chattels or real property purchased or leased *for use.*"
 *§ 17.45(2)* of the amended Act reads:
 " 'Services' means work, labor, or service purchased or leased *for use,* including services furnished in connection with the sale or repair of goods." (emphasis supplied)

**5.** *Art. 5429b–2, § 2.01* reads in part: "Words and phrases shall be read in context and construed according to the rules of grammar and common usage."

enunciated in *Satterfield,* supra. We turn now to a few of the authorities defining the word "use".

In *Southwestern Telegraph & Tel. Co. v. City of Dallas,* 174 S.W. 636, 641 (Tex.Civ. App.—Dallas 1915, writ ref'd), the court said: " 'Use' means to make use of; to convert to one's own service; to put to a purpose; to hold, occupy, enjoy, or take the benefit of." In a more recent case of solid precedential value, *James Stewart & Co. v. Mobley,* 282 S.W.2d 290, 294 (Tex.Civ.App. —Dallas 1955, writ ref'd), the court said: " '*Use*' is to employ for accomplishment of a purpose; to apply to one's services; to avail oneself of."

*Black's Law Dictionary (Rev. 4th Ed., 1968)* says that in the non-technical sense, the " 'use' of a thing means that one is to enjoy, hold, occupy, or have some manner of benefit thereof." It also means "usefulness, utility, advantage, productive of benefit."

The word was defined by then Chief Justice Barrow, in *Beggs v. Texas Dep't. of Mental Health & Mental Ret.,* 496 S.W.2d 252, 254 (Tex.Civ.App.—San Antonio 1973, writ ref'd), as follows: " 'to put or bring into action or service; to employ for or apply to a given purpose.' "

The jury found in Bill Person's favor each of the constituent elements of a cause of action under *Tex.Bus. & Comm.Code Ann. § 27.01 (1968),* and the jury found that the lots he purchased were worth $19,000 but that if Latham had performed as he represented, they would have been worth $38,-000, so his judgment was for $19,000 plus exemplary damages in the sum of $20,000. Thus, we review a judgment wherein there has been a recovery under a special statute governing transactions involving real estate sold under false representations.

We note in passing that *§ 27.01* is derived from *Tex.Rev.Civ.Stat.Ann. art. 4004 (1966),* which for nearly a half century governed suits involving fraudulent representations with regard to land transactions and in stock of corporations. It is significant that the new Act, *§ 17.45(1),* specifically excludes fraudulent representations as to stock in corporations: " 'Goods' means *tangible* chattels. . . ."

Moreover, the legislature did not indicate any intention to repeal or to modify the statute presently found in *§ 27.01.* We have a special statute governing corporate stock and real estate and we find no imperative need to torture this case into one covered by the Deceptive Trade Practices Act.

Bill Person pleaded and proved a cause of action under *§ 27.01.* See and compare, *Stanfield v. O'Boyle,* 462 S.W.2d 270, 271 (Tex.1971). We affirm his judgment on that cause of action against Latham. In so doing, we overrule and deny his claims to a recovery under *§ 17.45.*

Claude Person was a rancher in Jack County and had no prior experience in buying or selling lots in real estate subdivisions. His brother Bill talked to him about buying some property in Montgomery County. Bill told him that "a lady was, was in the process of buying them, that she wanted them [the lots] to build a beautiful lake home." He, too, was gullible and frankly testified that he purchased a lot so "[t]hat I could resell it and make some money."

He and his wife drove to Lake Conroe and met Latham who showed them the lot that Latham represented as being the one "Mrs. Gigglia" needed to round out her lakefront property acquisition. Latham told them "that Clydean [Mrs. Claude Person] and I would make about five, would make $5,000 off that one particular lot." Subsequently, Latham told him that one "Roy James" was interested in purchasing two other lots for $20,000 each but that Claude could purchase them for $10,000 each. With the glint of large and quick profit, Claude purchased his lots. He soon found out that there was no substance to Latham's representations.

Claude Person filed his suit against the defendants in Montgomery County on October 31, 1975, and, eventually, his suit was consolidated with that of Bill which had been filed several weeks earlier. While Claude's suit was pending in Montgomery

County, he and another brother (Richard) filed a suit in Jack County on April 7, 1976, naming Latham as a party defendant. Claude specifically sought a recovery of $4,900 for money he had paid to Latham on the Montgomery County lots forming the basis of this suit then pending in that county.

Latham defaulted on the Jack County litigation and Claude, along with his wife and other brother as plaintiffs in Jack County, recovered judgment against Latham for $20,125, the judgment having been signed on June 19, 1976, based upon testimony heard by the trial court on May 27, 1976.

■ Latham learned of the default judgment and timely filed his original motion for new trial and it was timely amended on July 21. The parties agreed in writing filed with the court on August 17, that the amended motion would be argued on September 9 and acted upon within twenty days thereafter. See *Tex.R.Civ.P. 329b, § 3.*

No order was entered on September 29 so that the motion was overruled by operation of law upon that date. *Sanders v. West Texas Utilities Co.,* 537 S.W.2d 787, 788 (Tex.Civ.App.—Eastland 1976, writ ref'd). Notwithstanding this effect of the non-action on the part of the trial court, it still had jurisdiction over its judgment for an additional thirty days during which time it could have entered an order vacating, modifying, correcting, or reforming such judgment. *Transamerican Leasing Co. v. Three Bears, Inc.,* 567 S.W.2d 799, 800 (Tex.1978); *Mathes v. Kelton,* 569 S.W.2d 876, 878 (Tex. 1978). No such action was taken by the trial court during that period.

Instead, within thirty days after September 29, counsel for the Jack County plaintiffs (Claude, et al.) filed an instrument among the papers entitled "Notice of Abandonment". In this instrument, counsel purported to act for all of the plaintiffs declaring "that they hereby abandon and forego those damages alleged in Paragraph I of Plaintiffs' First Original Petition." The noticed paragraph was one seeking $4,900 for money had and received by Latham on the lots purchased by Claude.

In filing this "abandonment", counsel recited that it was done pursuant to *Tex.R. Civ.P. 165* [6] and the "notice" contained this additional language:

> "Plaintiffs hereby stipulate that the Judgment in this cause should be adjusted and credited with the figure of $4,900.00 for this purpose."

In April, 1977, the Sheriff sold several items of personal property under Claude's Jack County judgment for the sum of $95.00—the precise amount of the court costs.[7] The effect of these maneuvers, if upheld in this court, is to permit Claude, et al., to litigate and recover a judgment for more than $20,000 in Jack County and to reserve Claude's claim for further litigation in Montgomery County. We decline to permit this result.

■ Reduced to its simplest form, Claude's position is that he was entitled to take a partial non-suit *after* he had secured a judgment upon his claim, thus enabling him to litigate the same claim elsewhere again. We have found no authority permitting such action or supporting such contention. *Rule 165* permits an abandonment of a part of a claim or defense *before* but not *after* trial of the cause and entry of the judgment. We decline to apply *Rule 165* to a case wherein judgment was rendered on a claim before the motion to abandon was filed.

Under the record which we have reviewed, the action of the trial court in sustaining the plea of res judicata was proper and all points attacking such action are overruled. *Freeman v. McAninch,* 87 Tex.

---

6. *Rule 165:* "A party who abandons any part of his claim or defense, as contained in the pleadings, may have that fact entered of record, so as to show that the matters therein were not tried."

7. Plaintiffs had alleged that the equipment, including a "new Massey Ferguson tractor—model 235 diesel . . . ." was worth in excess of $15,000.

132, 27 S.W. 97 (1894). See also Z. Steakley and W. Howell, Jr., "Ruminations on Res Judicata", *28 S.W.L.J. 355, 363, et seq. (1974),* where most of the modern authorities are cited and discussed.

Finding no error, the judgment of the trial court is affirmed.