Raymond RATCLIFF et al., Appellants,

v.

George H. TRENHOLM, Jr. and Oxford Building Systems, Inc., Appellees.

No. 1311.

Court of Civil Appeals of Texas, Tyler.

March 13, 1980.

Rehearing Denied April 3, 1980.

Edward S. Koppman, Akin, Gump, Hauer & Feld, Robert E. Goodfriend, Jeffrey C. Slade, Dallas, for appellants.

John M. Gillis, Dallas, for appellees.

MOORE, Justice.

This is a suit brought under both the Deceptive Trade Practices-Consumer Protection Act, Tex.Bus. & Com.Code Ann. sections 17.41 et seq. (Vernon Supp.1980)[1] and the Fraud in Real Estate and Stock Transactions provisions, Tex.Bus. & Com.Code Ann. section 27.01 (Vernon 1968).[2] Plaintiffs, George H. Trenholm, Jr., and Oxford

---

1. Sometimes hereinafter referred to as the DTPA.

2. Hereinafter referred to as section 27.01.

Building Systems, Inc., a corporation through which Trenholm conducted his business of home building, instituted suit against defendants, Raymond Ratcliff and Ramahal Development Corporation, alleging that in November or December, 1975, defendant Raymond Ratcliff made certain deceptive, false, and misleading representations in connection with the sale to plaintiffs of eighteen lots in the Greenhollow Addition to the city of Plano, Texas. Plaintiffs alleged that in reliance upon the false representations, they subsequently purchased the eighteen lots for the purpose of building homes thereon for resale to the public and suffered damages as a result of the false representations. Plaintiffs sought a recovery for the "benefit of the bargain" damages and exemplary damages as provided under section 27.01, supra. Plaintiffs further sought a recovery for treble damages for lost profits under section 17.50 of the Deceptive Trade Practices—Consumer Protection Act, supra. Defendants answered with a general denial and specially denied that plaintiffs were consumers entitled to protection under the DTPA. Trial was before the court and a jury. Pursuant to the jury's verdict, the trial court entered judgment awarding plaintiffs a recovery in the amount of $75,000.00 for loss of profits under the DTPA which amount was trebled in accordance with section 17.50 of the DTPA. As a result, the court entered judgment for plaintiffs for the total sum of $225,000.00, together with attorney's fees. The jury further found in plaintiffs' favor on each of the constituent elements of fraud under section 27.01 and assessed damages in the amount of $111,000.00 plus exemplary damages in the amount of $50,-000.00. The trial court, for reasons to be discussed later, limited the plaintiffs' recovery to the damages sustained by plaintiffs under the provisions of the DTPA in the amount of $225,000.00 plus attorney's fees. Defendants filed a motion for judgment non obstante veredicto as well as a motion for a new trial. After both motions had been overruled, defendants perfected this appeal.

We reverse and render in part and reverse and remand in part.

The facts, other than for those alleging that certain representations were false, do not appear to be in dispute. The eighteen lots in question were owned by Richardson Savings & Loan Association. Defendant, Raymond Ratcliff, a land developer, undertook to develop and sell the lots for the Association. Sometime either in November or December, 1975, Ratcliff held a "draw" meeting for home builders for the purpose of advertising and explaining the proposed development of the Greenhollow project. The meeting was attended by several builders, including the plaintiff, George H. Trenholm, Jr. At the meeting, Ratcliff made a sales presentation and answered various questions with regard to the future development of the lots. At the meeting, plaintiffs selected and purchased six lots on which six homes were later built. Although some of the homes were sold at a profit, others were sold at a loss which resulted in an overall net loss on the six homes. Later, plaintiffs entered into a joint venture with Richardson Savings & Loan Association under the terms of which plaintiffs agreed to build homes on twelve additional lots on the basis of fifty percent of the net profits or net losses. Homes were subsequently built on these twelve lots and sold to the public. The joint venture turned out to be unprofitable resulting in a large loss to plaintiffs and Richardson Savings & Loan Association.

According to the allegations of plaintiffs' petition, the losses sustained were a direct result of the following false representations made by Ratcliff: (1) that a trailer park near the entrance of Greenhollow Development would be timely moved; (2) that a designated elementary school would be built on a nearby tract of land forthwith; (3) that a bridge would be built on Alma Road by midyear 1976; and (4) that the residences to be built in the Greenhollow Development would contain a minimum of 2,200 square feet. Plaintiffs alleged that the foregoing representations were false, deceptive, and misleading, and as a result they were forced to sell the houses at a

lower price than they would have been sold had the promises or representations been fulfilled, thereby causing plaintiffs to suffer a net loss on all eighteen houses.

The jury found that defendant, Ratcliff, made each of the foregoing representations and further found in plaintiffs' favor each of the constituent elements of a cause of action under section 27.01. In response to the damage issues submitted in accordance with the last mentioned statute, the jury found in response to Special Issue No. 3 that the value of the lots purchased by Oxford Building Systems in the Greenhollow Development would have been $223,500.00 if they had been as represented. In response to Special Issue No. 4, the jury found that the value of the lots purchased by Oxford in the Greenhollow Development was $112,500.00 as actually sold. The jury also found that plaintiffs were entitled to exemplary damages in the amount of $50,000.00. In response to the special issues submitted in connection with plaintiffs' claim under the DTPA, the jury found, in response to Special Issue No. 6, that Ratcliff represented that the lots had or would have a characteristic or characteristics, or a use or uses, or a benefit or benefits, which they did not have. In response to Special Issue No. 7, the jury found that Ratcliff represented that the lots were or would be of a particular standard or quality when they were of another. In response to Special Issue No. 8, the jury found that the representations made by Ratcliff were false, misleading, or deceptive, and in response to Special Issue No. 9, the jury found that such false, misleading, or deceptive representations were a producing cause of the damages sustained by plaintiffs. In response to Special Issue No. 10, the jury found that the sum of $75,000.00 would reasonably compensate plaintiffs for their loss of profit incurred as a result of the alleged false, misleading, and deceptive representations.

Under the first point of error, defendants assert that the trial court erred in rendering judgment in favor of the plaintiffs under the Deceptive Trade Practices—Consumer Protection Act, since appellees were merchants and not consumers and therefore were not entitled to the protection of the act as it existed when the plaintiffs' cause of action accrued in December 1975. Plaintiffs' rejoinder is that the purchase of the lots for improvement and resale is a purchase for use, and they are therefore entitled to the protection of the Act. We have concluded that at the time the plaintiffs' cause of action accrued, they were not consumers and therefore we sustain defendants' contention.

Section 17.50 of the Deceptive Trade Practices—Consumer Protection Act is entitled "Relief for Consumers." At the time this case arose, section (b) provided:

"In a suit filed under this section, each consumer who prevails may obtain:

(1) three times the amount of actual damages plus court cost and attorneys' fees reasonable in relation to the amount of work expended . . . ."

It has been held that only individuals, partnerships, or corporations who are found to be within the class of "consumers" are entitled to sue under the DTPA. *Trial v. McCoy*, 553 S.W.2d 199 (Tex.Civ.App.—El Paso 1977, no writ); *Russell v. Hartford Casualty Insurance Co.*, 548 S.W.2d 737, 741 (Tex.Civ.App.—Austin 1977, writ ref'd n. r. e.); *Bourland v. State*, 528 S.W.2d 350, 358 (Tex.Civ.App.—Austin 1975, writ ref'd n. r. e.).

At the time this case arose, section 17.45 provided:

"(1) 'Goods' means tangible chattels or real property purchased or leased *for use*.

"(2) 'Services' means work, labor, or service purchased or leased for use, *for other than commercial or business use*, including services furnished in connection with the sale or repair of goods.

.  .  .  .  .

"(4) 'Consumer' means an individual, partnership, or corporation who seeks or acquires by purchase or lease, any goods or services.

"(5) 'Merchant' means a party to a consumer transaction other than a consumer." (Emphasis added.)

From a reading of the foregoing definitions, it is reasonable to infer that the purchase of goods for commercial purposes, such as for resale or for use in the production of other goods, is not within the contemplation of the DTPA. A construction of the act, including purchases of goods for resale, would be wholly inconsistent with the provisions excluding purchases of services for business or commercial use. In enacting the Deceptive Trade Practices Act, the Texas Legislature intended to create an effective remedy for individuals, partnerships, and corporations placed at a disadvantage in the market place and not to govern the commercial relationship involving merchants. In the instant case, plaintiffs were engaged in the commercial trade of building homes for sale to the public. Pursuant to their business they purchased six lots and an interest in twelve other lots for development and resale to individuals desiring to reside in the Greenhollow Development. Plaintiffs clearly acted as merchants with respect to the purchase and resale of the lots. It is thus clear that at the time of the accrual of the plaintiffs' cause of action, which was before the "merchant" definition and the "for other than commercial or business use" exceptions to the definition of "services" were removed from the DTPA, plaintiffs were not consumers as contemplated by the act and consequently were not afforded a remedy thereunder. *Trial v. McCoy*, supra; see also *Person v. Latham*, 582 S.W.2d 246 (Tex. Civ.App.—Beaumont 1979, writ ref'd n. r. e.). It follows that the judgment awarding plaintiffs a recovery under the provisions of the Deceptive Trade Practices—Consumer Protection Act must be reversed.

Plaintiffs' argument that they were consumers because they acquired goods (real property) for use is not convincing. It is plaintiffs' contention that by applying the building sites to their intended use, i. e., building homes on them, the use was a utilization and process of home production which destroys the utility of the lots as building sites and precludes further use except as an assignee or vendee of the use made by plaintiffs.

■ Inasmuch as the legislature did not specifically define the word "use" in the DTPA, its ordinary meaning will be applied. *Satterfield v. Satterfield*, 448 S.W.2d 456, 459 (Tex.1969); *Person v. Latham*, supra. Black's Law Dictionary (Rev. 4th ed. 1968) says that in the nontechnical sense the use of a thing means that one is to enjoy, hold, occupy, or have some manner of benefit thereof. In *Southwestern Telegraph & Telephone Co. v. City of Dallas*, 174 S.W. 636, 641 (Tex.Civ.App.—Dallas 1915, writ ref'd), the court said " 'use' means to make use of; to convert to one's own service; to put to a purpose; to hold, occupy, enjoy, or take the benefit of."

■ In determining whether plaintiffs were in fact consumers by reason of the use made of the lots, the definition of "consumer" should be considered. In *Ex parte Mehlman*, 127 Tex.Cr.R. 257, 75 S.W.2d 689, 690 (1934), the court stated the dictionary definition of that word as " 'one who uses (economic) goods and so diminishes or destroys their [utility];—opposed to producer,' " and stated the definition of "consume" as to "use up, expend, waste, devour." In applying the definition of the term "use" we must not lose sight of the context in which it is used in the DTPA. In the instant case plaintiffs did not acquire the lots to hold, occupy, or enjoy, nor to convert the same to their own service. Also, they did not use the lots so as to diminish or destroy their utility. Rather, they acted as a mere conduit. *L & M-Surco Manufacturing, Inc. v. Winn Tile Co.*, 580 S.W.2d 920 (Tex.Civ.App.—Tyler 1979, writ dism'd). Inasmuch as plaintiffs did not acquire the lots for use but rather for resale, they occupied the status of "merchants" rather than "consumers." We adhere to our conclusion that plaintiffs did not occupy the status of a "consumer" under the Act.

We now turn to consider plaintiffs' complaint of the judgment. By a single crosspoint, plaintiffs contend that the trial court erred in not granting their motion for judgment on the verdict and entering judgment in their favor for the cumulative amount of

damages as found by the jury under both the DTPA and for fraud under section 27.-01. In this connection, plaintiffs state that if this court reverses the judgment granted by the trial court under the DTPA and reforms the judgment so as to grant them a recovery for damages based on the jury's finding of fraud, then this crosspoint will become moot.

In order to understand the posture of the case as it reaches us, we take the following recitation from the judgment:

It appears to the Court that from the evidence, the verdict of the jury and the law applicable thereto and under the provisions of Section 27.01 of the Texas Business and Commerce Code that Plaintiffs are entitled to a judgment against Defendants for the difference between the value of the real estate as represented and its actual value as delivered in the amount of $59,500.00, together with the additional sum of $50,000.00 as exemplary damages. . . .

It further appears to the Court that Plaintiff may not recover, simultaneously, damages as found under Section 27.01 of the Texas Business and Commerce Code and the Deceptive Trade Practices—Consumer Protection Act and that Plaintiff is only entitled to the greatest relief under a single theory that the verdict will support; and that recovery for $75,000.00 damages resulting from the deceptive trade practices of Defendants, trebled, will yield greater relief for Plaintiff than the damages and exemplary damages found as a result of fraud in a real estate transaction.

Accordingly, the trial court rendered judgment in favor of plaintiffs for the sum of $225,000.00, plus attorney's fees, but declined to enter judgment for the damages found as a result of fraud. In view of our holding that plaintiffs are not entitled to recover under the DTPA, plaintiffs' contention that they are entitled to recover cumulative damages as found by the jury under both remedies is untenable.

While the trial court did not carry into effect the jury's finding of damages for fraud, the trial court did pronounce that plaintiffs were entitled to recover judgment thereon except that plaintiffs were entitled to a greater judgment under the DTPA. As we view the record, this ruling is erroneous because the facts show, as a matter of law, that plaintiffs failed to establish a cause of action under the Fraud in Real Estate provision of section 27.01.

■ Actionable fraud under section 27.01 relates to transactions in real estate, stock in corporations, or joint stock companies, and provides that fraud in such transactions consists of a *false promise to do some act in the future* that is material and "made with the intention of not fulfilling it." The statute (sec. 27.01) supercedes article 4004, V.T.C.S. Both the prior statute (art. 4004) and the present statute are penal in nature and must be strictly construed. *Westcliff Co. v. Wall*, 153 Tex. 271, 267 S.W.2d 544 (1954).

The question presented is whether Ratcliff's statements amount to a false promise to do some *act* in the future so as to fall within the ambit of section 27.01. Defendants take the position that none of the representations as found by the jury are actionable under section 27.01 because none of the statements amount to a false promise to do a future act. It is their contention that each statement made by him amounted to nothing more than a prediction of what would happen in the future and that he made no false promise to perform any act in the future. We are of the opinion that defendants' contention must be sustained.

■ The evidence as distinguished from the jury's findings shows that defendant Ratcliff made the following statements at the "draw" meeting in December 1975. First, he stated that the trailer park would be moved by April or June of the following year. He further stated that the land on which it was situated would become so valuable that it would be uneconomical for the owners to continue to use it as a trailer park. He also stated that he understood that the trailer park property had been sold and that the people having trailers thereon had been notified to move. There is noth-

ing in the record indicating that he had any control over the trailer park or when it would be moved. In our view, the prediction made by Ratcliff did not amount to a promise to do a future act. It amounted to nothing more than a prophesy as to what the owners of the trailer park would do in the future.

Secondly, Ratcliff made the statement that an elementary school would be open for the 1977 school year. Although school was subsequently commenced, it was not ready to be open until the latter part of 1978 or the first part of 1979. The evidence further shows that Ratcliff stated that he had received his information about the school and the date of the opening from the school officials. In our opinion this statement could not amount to a false promise to do a future act. In any event, the well-established rule is that an action in fraud may not be based upon statements that are expressly represented to be made on information. *Boles v. Aldridge*, 107 Tex. 209, 175 S.W. 1052 (1915); *see* 25 Tex.Jur.2d Fraud and Deceit, section 39 (1961).

Thirdly, Ratcliff stated that the bridge on Alma Road "should" be completed by midyear 1976. He stated that the completion of the bridge would depend on the weather, and that allowing a couple of months for bad weather, the bridge "should" be completed by July or August. The evidence shows that the bridge was to be constructed by the city of Plano and that Richardson Savings & Loan was contributing to the cost of construction. The bridge was not completed until after the time that he predicted it would be completed. Here again, we fail to see how this statement, which did nothing more than estimate the completion date of the bridge, could amount to a false promise on the part of Ratcliff to do a future act. As we view the statement, it amounted to nothing more than an estimation or prophesy.

Finally, Ratcliff stated that the houses in the Greenhollow Development would contain 2,200 square feet. The evidence shows that the owner of the lots,

Richardson Savings & Loan, imposed a building restriction in the conveyance, requiring the builders to build houses containing a minimum of 2,200 square feet, allowing a 10% tolerance. Inasmuch as Ratcliff was a developer and salesman acting for the Richardson Savings & Loan Association, plaintiffs knew or should have known that he was not promising the enforcement of the restriction. There is no evidence that he promised that he would supervise the construction or require the home builders to build houses with a minimum of 2,200 square feet. As we view this statement, it amounted to an opinion or a prediction that the home builders would build the homes in accordance with the building restriction, rather than a promise on the part of Ratcliff to perform some future act. In summary, we conclude that there is no evidence that Ratcliff promised to perform any future act, and therefore, section 27.01 is inapplicable to the facts of this case. It therefore follows that plaintiffs are not entitled to a recovery for fraud under section 27.01.

Although section 27.01 is inapplicable to the facts of this case, it does not defeat plaintiffs' right to recover damages for fraud under the common-law rules of equitable jurisprudence. Section 27.01 neither supercedes the common-law rule nor provides an exclusive remedy for the recovery of damages in an action based on fraud in a transaction involving real estate. *Sherrod v. Bailey*, 580 S.W.2d 24 (Tex.Civ. App.—Houston [1st Dist.] 1979, writ ref'd n. r. e.); *El Paso Development Co. v. Ravel*, 339 S.W.2d 360 (Tex.Civ.App.—El Paso 1960, writ ref'd n. r. e.).

At common law, an expression of an opinion as to the happening of a future event may constitute fraud and deceit where the speaker purports to have special knowledge as to facts that will occur or exist in the future. *Russell v. Industrial Transportation Co.*, 113 Tex. 441, 251 S.W. 1034 (Tex.Com.App.1923, holding approved), *aff'd on rehearing*, 258 S.W. 462 (1924); *City of Houston v. Howe & Wise*, 373 S.W.2d 781 (Tex.Civ.App.—Houston 1963,

writ ref'd n. r. e.), citing cases; W. Prosser, Law on Torts, at 744 (3rd ed. 1964). It appears to us that plaintiffs' pleadings, as well as the evidence offered at the trial, would probably be sufficient to raise the issue of common-law fraud and deceit, especially with regard to Ratcliff's statement that the trailer park would be moved. The case was not submitted on the theory of common-law fraud and deceit, but was submitted on two statutory theories of fraud, neither of which were applicable under the facts. Plaintiffs' right to recover upon the theory of common-law fraud and deceit has not been determined. · It thus appears that the case was submitted upon the wrong theory. Under such circumstances, it is clear that the ends of justice will be better subserved by reversing and remanding the cause so as to allow plaintiffs to pursue their common-law action for fraud and deceit. *Colbert v. Dallas Joint Stock Land Bank*, 129 Tex. 235, 102 S.W.2d 1031 (1937); *Waldo v. Galveston H. & S. A. Ry. Co.*, 50 S.W.2d 274 (Tex.Com.App.1932, holding approved); *Cape Conroe, Ltd. v. Specht*, 525 S.W.2d 215 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ), *overruled on other grounds, Woods v. Littleton*, 554 S.W.2d 662, 668 (Tex.1977).

In summary, we reverse and render that portion of the judgment granting plaintiffs a judgment under the DTPA and render judgment that plaintiffs take nothing. As to the issue of fraud, the judgment is reversed and remanded for trial in accordance with this opinion.

Under the disposition made of this case, we do not reach the other points of error briefed by defendants.

Reversed and rendered in part and reversed and remanded in part.