Steven E. Walraven, Groce, Locke & Hebdon, San Antonio, Tex., for defendant.

## SOUTH TEXAS IRRIGATION SYSTEMS, INC.

v.

## LOCKWOOD CORPORATION.

Civ. A. No. SA79CA163.

United States District Court,
W. D. Texas,
San Antonio Division.

May 27, 1980.

## MEMORANDUM OPINION

SPEARS, District Judge.

This diversity case involves a dispute between an irrigation equipment distributor and the manufacturer it formerly represented, over a rebate offer made by the manufacturer. The plaintiff alleges a breach of contract and violation of the Texas Deceptive Trade Practices—Consumer Protection Act, Tex.Bus. & Comm.Code § 17.41, et seq. (DTPA) Presently before the Court are cross-motions for summary judgment on all claims for relief. For the reasons hereinafter set forth, the defendant's

motion for summary judgment on the DTPA claims will be granted, but the cross-motions on the breach of contract claim will be held in abeyance pending further order of the Court.

## I.

The defendant (Lockwood Corporation) is a manufacturer of irrigation equipment and the plaintiff (South Texas Irrigation Systems, Inc.) was at one time its authorized dealer, engaged in the business of selling irrigation systems. In November, 1977 defendant sent its dealers a bulletin offering rebates for certain irrigation systems, "upon payment of the invoice and warranty registration." The plaintiff alleges that in this bulletin, defendant offered to pay year end rebates to its dealers on sales [1] of irrigation systems and equipment made between November and December, 1977. Plaintiff further alleges that in accordance with this offer, it sold three irrigation systems entitling it to rebates totaling $14,550. The rebates were not paid, and plaintiff filed this suit in state court, alleging that defendant breached the rebate contract and violated the DTPA by representing that its irrigation systems had rebates to dealers which they did not have. After the case was removed to this Court on the basis of diversity of citizenship, defendant filed its motion for summary judgment, contending that it is entitled to judgment as a matter of law on the deceptive trade practices claims because plaintiff lacks standing to complain of any alleged violation of the DTPA since plaintiff was not a "consumer" within the meaning of the Act. After con-sidering Texas substantive law, the Court is of the opinion that plaintiff was not acting as a "consumer" when it purchased the irrigation systems for resale, and that it therefore cannot, under the facts of this case, assert a cause of action based on the DTPA.

## II.

The Texas Deceptive Trade Practices—Consumer Protection Act was designed "to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection." Tex. Bus. & Comm. Code § 17.44. It is undisputed that the irrigation systems under consideration here were purchased for resale.

Section 17.50(a) of the DTPA provides in part that "a *consumer* may maintain an action if he has been adversely affected by any of the following . . .". (emphasis added). Section 17.45(4) defines a consumer as "an individual, partnership, corporation or governmental entity who seeks or acquires by purchase or lease, any *goods* or services." (emphasis added). In turn, Section 17.45(1) defines "goods" as "tangible chattels or real property purchased or leased *for use*." (emphasis added).

The issue in this case is whether tangible chattels purchased for resale are purchased "for use" within the meaning of the Act. This precise issue was answered in the negative by this Court in *Rod East Volkswagen v. Auranthetic Corporation*, No. SA–74–CA–6 (W.D.Tex. April 16, 1976),[2] a case in

---

1. Plaintiff's allegation that the rebates were offered on "sales" of irrigation systems is accepted as true for the purpose of defendant's motion for summary judgment.

2. The opinion in this case was not published, but it did set forth this Court's views in pertinent part as follows:

In their current motion for summary judgment the defendant presents a new ground in support of its contention that the plaintiff is not a "consumer" within the meaning of the Act. It points out that Section 17.45(4) defines "consumer" as being "an individual, partnership, or corporation who seeks or acquires by purchase or lease, any goods or services;" that subparagraph (1) defines "goods" as being "tangible chattels or real property purchased or leased for use;" and that subparagraph (2) defines "services" as being "work, labor, or services purchased or leased for use for other than commercial or business use, including services furnished in connection with the sale or repair of goods." The argument is then made that the phrase "for use" indicates an intention to exclude from the protection of the Act someone who purchases goods or services for resale. Webster defines "consumer" as being "one who uses (economic) goods, and so diminishes their utilities." Words & Phrases adds to that

which *Rod East Volkswagen*, a distributor, brought suit against the manufacturer it represented for alleged violations of the DTPA. It was held that since the plaintiff bought the goods in question for resale, it was not a "consumer" within the meaning of the Act, because the phrase "for use" indicates an intention to exclude from the protection of the Act someone who purchases goods . . . for resale. It was concluded that notwithstanding the "liberal construction" to be given to the Act, the phrase "for use" in the definition of "goods" was intended to give "consumer" the ordinary meaning which the Texas courts had already ascribed to it, and it was noted that the Texas courts have held that "one who buys goods for resale is not a consumer, in the ordinary meaning of the term."

Nothing has been presented in this case which would warrant a result different from that reached in *Rod East Volkswagen*. On the contrary, subsequent developments fully support the conclusion reached in that case. In *Person v. Latham*, 582 S.W.2d 246 (Tex.Civ.App.—Beaumont 1979, writ ref'd n. r. e.), suit was brought pursuant to Tex. Bus. & Comm.Code § 27 (Fraud in Real Estate and Stock Transactions) and the Deceptive Trade Practices Act. In that case, the defendant represented that plaintiffs could re-sell the property to a third party for a profit. Among other things, the Court held that plaintiffs did not purchase the real estate to consume or use it, but to become a link in a chain designed to defraud the third party. In addition, the Court held that since the legislature did not specifically define "use", its ordinary meaning would be applied.[3]

Although the plaintiff herein agrees that the term "for use" should be given its common and ordinary meaning, it argues that the term is broad enough to include those goods purchased as inventory or for resale. Such a construction of the DTPA would appear to expand the protection of the Act beyond that intended by the State legislature. It certainly cannot be said that plaintiff "consumed" the irrigation systems by buying them from defendant and selling them to third parties.

definition: "or the last person to whom property passes in the course of ownership." 9 Words & Phrases 12–15 (1960). The Texas Courts have adopted this common language meaning with emphasis on "using up" of the goods. *Ex-parte Mehlman*, 127 Tex.Cr.R. 257, 75 S.W.2d 689, 690 (1934). In *Southern Iron & Metal Co. v. Yaffax*, 351 S.W.2d 664, 665 (Tex. Civ.App.—Waco, 1961 no writ), the Court was more specific in saying that "one who buys goods for re-sale is not a consumer, in the ordinary meaning of the term." Obviously, therefore, what the defendant is now saying is that the question as to whether or not one is a "consumer" must be determined more on the basis of his relation to the seller, and the goods in the flow of commerce, than by his legal status as a corporation, partnership or individual. Stated another way, the issue is not whether the plaintiff corporation can be a consumer, but whether it was in fact acting as a consumer in its dealings with Auranthetic. Notwithstanding the "liberal construction" to be given to the Act, this Court is now of the opinion that the phrase "for use" in the definition of "goods" and "services" was intended to give "consumer" the ordinary meaning which the Texas courts had already ascribed to it.

**3.** As one commentator has stated,

. . . one cannot overlook the logical fact that consumers essentially are people who consume. A merchant does not use goods in inventory in the same sense in which a consumer uses goods he purchases from a merchant's inventory. A clear example of the distinction which should be drawn under the Act is the business of an automobile dealer. A dealer may purchase some automobiles from the factory for immediate resale to the public, while others are used as demonstrators. On the one hand, the automobiles are inventory. On the other hand, the dealer is in the same position as any other consumer. Under the Act, a dealer should have standing to sue where the automobile in question is a demonstrator being *used* by the dealer because there is no logical difference between his use of the car and that of an individual consumer.

However, giving the word "use" a meaning which would include inventory within the definition of "goods" would be to expand the scheme of the statute beyond the type of person it apparently is designed to protect. The courts should construe "use" to be the equivalent of "consume," thereby excluding transactions extrinsic to the intended scope of the statute. Bragg, *Now We're All Consumers! The 1975 Amendments to the Consumer Protection Act*, 28 Baylor L.Rev. 1, 9 (1976).

The Court is mindful of the fact that upon a motion for summary judgment all inferences to be drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). However, the only fact relevant to this portion of the motions for summary judgment is whether the irrigation systems were purchased by plaintiff for resale, and this fact is conceded by both parties to this case. Of course, this is not to say that the plaintiff could not be a consumer in connection with other transactions, but that it simply was not acting as a consumer in its dealings with defendant.

Accordingly, the Court finds that plaintiff is not a "consumer" within the meaning of the Texas Deceptive Trade Practices— Consumer Protection Act; thus it lacks standing to assert a cause of action thereunder. It is, therefore,

ORDERED, ADJUDGED and DECREED:

(1) Defendant's motion for summary judgment on the Deceptive Trade Practices Act claims is hereby GRANTED.

(2) Plaintiff's motion for summary judgment on the Deceptive Trade Practices Act claims is hereby OVERRULED.

(3) The cross-motions for summary judgment on the breach of contract claims are held in abeyance pending further order of the Court.