**BIG H AUTO AUCTION, INC.,**
Petitioner,

v.

**SAENZ MOTORS, Respondent.**

No. C–2267.

Supreme Court of Texas.

Feb. 1, 1984.

Rehearing Denied April 4, 1984.

Green, Downey, Patterson & Schultz, William T. Green III, Houston, for petitioner.

Cardenas & Whitis, William E. Corcoran, McAllen, for respondent.

CAMPBELL, Justice.

This is a deceptive trade practices case. Saenz Motors, a used car dealer, sued Big H Auto, for damages resulting from the purchase of two vehicles. The trial court held Saenz Motors was not a consumer under the Deceptive Trade Practices Act (DTPA) and rendered judgment for actual damages only. The court of appeals reversed the trial court judgment holding that Saenz Motors was a consumer and awarded treble damages and attorneys' fees. 653 S.W.2d 521. We affirm the judgment of the court of appeals.

In December 1978, Saenz Motors bought from Big H Auto Auction, Inc. a 1976 Dodge Van and a 1979 Ford Thunderbird for $9,340.00. At the sale, Big H told Saenz Motors that the original titles had been lost, and provided certified copies of the original titles. The cars were resold by Saenz Motors and the new owners were refused certificates of title by the Department of Public Safety because the automobiles had been stolen. Saenz Motors then requested Big H to return its money. When Big H refused, Saenz Motors sued

Big H for treble damages, attorneys' fees and costs under the DTPA.

Our question is whether a buyer of goods for resale is a consumer under the DTPA. Specifically, the issue is whether resale of goods constitutes "use" as required by the DTPA. The statutory provisions that govern are those in effect at the time the act occurred, 1978. *Woods v. Littleton*, 554 S.W.2d 662, 666 (Tex.1977). At the time of these actions, the pertinent parts of the DTPA then applicable were:

Sec. 17.45   Definitions

As used in this subchapter:

1) "Goods" means tangible chattels or real property purchased or leased for use.

  \*     \*     \*     \*     \*     \*

4) "Consumer" means an individual, partnership, corporation, or governmental entity who seeks or acquires by purchase or lease, any goods or services.

Unfortunately the legislature failed to define use and failed to define the scope of the Act. To determine legislative intent we will study the history of the Act.

In 1973, the Act was introduced in the House of Representatives as H.B. 417. The same bill was introduced in the Senate as S.B. 75. Both forms defined goods, services and consumer as:

(1) "Goods" means tangible chattels bought for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for such goods, and including goods, which, at the time of the sale or subsequently, are to be affixed to real property, as to become a part of the real property whether or not severable.

(2) "Services" means work, labor, and services for other than commercial or business use, including services furnished in connection with the sale or repair of goods.

(3) "Consumer" means an individual who seeks or acquires by purchase or lease, any goods or services for personal, family, or household purposes.

On the Senate floor, Senator Snelson offered an amendment to the proposed Act and stated:

Mr. President and members of the Senate, in reading the definition of "goods," it seems to me that business people also could be the victims of deceptive practices in purchases of various equipment which they use and I don't see the purpose of nailing down the definition to the extent that they have it there because even if I am victimized in my business, I feel that I should have a right to an action under this particular bill. So that's the purpose of it. I think that the definition simply draws it down to what we are talking about and if there has been a deceptive practice in the sale of tangible goods to one that they should have access to the remedy, and that is the whole purpose of it.

Transcript of a Portion of the Floor Debate on S.B. 75, April 13, 1973. The personal, family or household purpose was stricken and the Act passed the Senate with new definitions of "Goods" and "Consumer."

"(1) 'Goods' means tangible chattels bought for use.

"(2) 'Consumer' means an individual who seeks or acquires by purchase or lease any goods or services."

The House of Representatives concurred with the amended Senate Bill and H.B. 417, as amended, was signed by the Governor.

In 1975, the scope of "consumer" was again changed in what we consider to be a broadening of the term. Senate Bill 48 sought to add the word "final" so that "goods" would mean "tangible chattels or real property purchased for final use" and "services" means "work, labor, or service purchased or leased for final use and for other than commercial or business use...." The word "final" was stricken prior to final passage. In support of deleting "final," a representative of the Texas Automobile Dealer Association testified that if "use" were restricted to "final use" automobile dealers would lose their standing to sue companies or individuals who sell products which are intended to be sold

to dealers' customers. In Senate floor debate, Senator Mauzy stated that "final" had been inadvertently added by the Senate Human Resources Committee, and that the amendment to delete the word was a committee amendment; that a consumer is a person who makes use of the goods but may not be the final user, and, that inserting the word would be restrictive and less broad than the present law. Senator Meier argued that the purpose of the Act was not to protect those buying goods for further processing or further marketing. Also, the Act was further amended to add to the definition of "consumer" corporations and partnerships. Tex.Laws 1975, ch. 62, § 1 at 149; Tex.Laws 1977, ch. 216, § 1 at 600. By a vote 28 to 3, the amendment passed and "final" was deleted.

In 1977, the Act was again amended. The "commercial or business use" exemption was deleted, thus removing all possible restriction on the word "use." Also, governmental entities were added to the definition of consumer.

The Act, as originally passed in 1973, included a definition of "merchant" as meaning a party to a consumer transaction other than a consumer. Merchant was deleted from the definition section in 1977. With this history, we now have the Act as it existed in 1978.

Sec. 17.45   Definitions

As used in this subchapter:

1) "Goods" means tangible chattels or real property purchased or leased for use.

\*     \*     \*     \*     \*     \*

4) "Consumer" means an individual, partnership, corporation, or governmental entity who seeks or acquires by purchase or lease, any goods or services.

■ Did the legislature intend that goods bought for resale be covered by the DTPA? It is a common statutory construction rule that if the legislature does not define a term, its ordinary meaning will be applied. *Satterfield v. Satterfield,* 448 S.W.2d 456 (Tex.1969). "Use" was defined

in *Southwestern Telegraph & Tel. Co. v. City of Dallas,* 174 S.W. 636 (Tex.Civ.App. —Dallas 1915, writ ref'd), as follows: " 'Use' means to make use of; to convert to one's own service; to put to a purpose; to hold, occupy, enjoy, or take the benefit of." BLACK'S LAW DICTIONARY (Rev. 4th Ed., 1968) says that in the non-technical sense, the " 'use' of a thing means that one is to enjoy, hold, occupy, or have some manner of benefit thereof." The word "use," as used in The Texas Tort Claims Act, was defined in *Beggs v. Texas Dep't of Mental Health & Mental Ret.,* 496 S.W.2d 252, 254 (Tex.Civ.App.—San Antonio 1973, writ ref'd), as " 'to put or bring into action or service; to employ for or apply to a given purpose.' " However, in *Pennington v. Singleton,* 606 S.W.2d 682 (Tex. 1980), this Court held that in construing the DTPA, a court is not necessarily confined to the literal meaning of the words used and that legislative intent rather than the strict letter of the Act will control. The intent should be determined from the entire Act and not from an isolated part. We are mandated by § 17.44 of the DTPA that the Act be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false misleading and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection.

■ Consumer, under the 1977 Act, means any individual, partnership or corporation who seeks or acquires by purchase or lease any goods or services. Saenz Motors is a consumer. The sale and representation by Big H of stolen vehicles was a deceptive business practice and an unconscionable action. Saenz, whether an individual, partnership or corporation, whether large or small, was deprived of $9,340.00 for whatever use was intended to be made of the cars. To limit "use" would be contrary to the statutory mandate of § 17.44 on construction and application of the Act.

The cases holding that a purchase for resale is not a use are inapplicable. The case of *Ratcliff v. Trenholm,* 596 S.W.2d

645 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r. e.), holding that a purchaser of lots for resale was not a consumer, was based on the 1975 Act. The Act then included the definition of "merchant" and had the "for other than business or commercial use" exception. That court stated that "The Plaintiffs clearly acted as merchants with respect to the purchase and resale of the lots. It is thus clear that at the time of the accrual of plaintiffs' cause of action, which was before the 'merchant' definition and the 'for other than commercial or business use' exceptions to the definition of 'services' were removed from the DTPA, plaintiffs were not consumers under the Act...."

In *Person v. Latham*, 582 S.W.2d 246 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.), the court stated that the plaintiff did not purchase the lots for use, but to become a link in a chain designed to fleece the mythical Mrs. Gigglia of her funds. That court, citing *Satterfield v. Satterfield*, 448 S.W.2d 456 (Tex.1969), that because the legislature did not specifically define "use" its ordinary meaning will be applied, held that "... we decline to permit one conspirator to recover treble damages against his co-conspirator in a scheme to defraud a third person." Additionally, the court held the plaintiff had pleaded and proved a cause of action under Texas Business and Commerce Code, § 27.01, which governs suits involving fraudulent representation in land transactions. The court stated: "We have a special statute governing corporate stock and real estate transactions and we find no imperative need to torture this case into one covered by the Deceptive Trade Practices Act."

We disapprove the holding in *Voss v. May*, 646 S.W.2d 606 (Tex.App.—Fort Worth 1983, writ dism'd w.o.j.), to the extent that it conflicts with this opinion. In this plea of privilege case involving a contract for sale of an automobile dealership, the court held that it is unclear what specific violations of the DTPA were relied upon and that dependence on the Act was mis-placed because the case should have been a common law action for breach of an indemnification agreement. After disposing of the case by holding that breach of an indemnification agreement would not constitute misconduct under the DTPA and that there was a complete lack of proof of a breach, the court went on to state there was another reason the DTPA does not apply. The court then held that a purchase for resale was not a purchase for use and the buyer was not a consumer. The *Voss* court relied on *Person v. Latham*, 582 S.W.2d 246 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.), and *South Texas Irrigation Systems, Inc. v. Lockwood Corp.*, 489 F.Supp. 256 (W.D.Tex.1980).

We have already pointed out the inapplicability of *Person v. Latham*. We also disagree with *South Texas Irrigations Systems* which held that a seller of irrigation systems purchased for resale was not a consumer. This case cites a 1976 unpublished opinion, *Rod East Volkswagen v. Auranthetic Corporation*, No. SA–74–CA–6 (W.D.Tex.)[1] and *Person v. Latham*. We cannot determine which version of the Act was construed in the *Rod East Volkswagen* case, whether the 1973 or 1975, but it certainly has no application to the case before us because of the amendments to the Act.

■ We hold that the purchase by Saenz Motors of two vehicles from Big H Auto Auction, Inc., for resale, is a "use" within the meaning of the Act. The judgment of the court of appeals is affirmed.

BARROW, J., dissents.

BARROW, Justice, dissenting.

I respectuflly dissent. *See Ratcliff v. Trenholm*, 596 S.W.2d 645 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.); *Person v. Latham*, 582 S.W.2d 246 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.).

---

**1.** Unpublished opinions are not regarded as precedent.