**FIRST NATIONAL BANK OF LAKE WILSON, a United States of America corporation, and Robert Junso, Plaintiffs,**

v.

**WESTERN FINANCIAL, INC., a South Dakota Corporation, et al., Defendants.**

**No. 2-75-Civ-203.**

United States District Court, D. Minnesota, Second Division.

Nov. 18, 1975.

Michael D. McCollum, Frommelt & Eide, Minneapolis, Minn., for plaintiffs.

Richard J. Nygaard and Roger R. Roe, Jr., Rider, Bennett, Egan, Johnson & Arundel, Minneapolis, Minn., for defendants Regal Investment, Inc. and Charles E. Bethel.

Robert W. Junghans, Larkin, Hoffman, Daly & Lindgren, Ltd., Minneapolis, Minn., for defendants Masterlease Corp. and John E. Watson.

## MEMORANDUM AND ORDER

DEVITT, Chief Judge.

In this action brought under the Securities Exchange Act of 1934 and the Securities Act of 1933, defendants move to dismiss on the ground that the court lacks subject matter jurisdiction because the transaction between plaintiff and defendants did not involve the sale or exchange of "securities" as that term is defined by federal securities law. The only basis of federal jurisdiction alleged in the complaint is a cause of action under the federal securities laws. 15 U.S. C. §§ 78aa and 77v. For the reasons expressed below, the court is of the opinion that the transaction in this case is not subject to the Securities Act of 1933, 15 U.S.C. § 77a et seq., and the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., and, therefore, defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) must be granted.

The interests which plaintiffs argue are "securities" consist of leasehold interests in certain items of personal property. The complaint alleges, inter alia, that the First National Bank of Lake Wilson was fraudulently induced to take an assignment of these leases in exchange for a cancellation of the indebtedness to it of Western Finance Company and J. P. Newcomb & Associates.

The complaint, briefs, and affidavits on file illustrate the following series of transactions which outline the history of the leasehold interests involved in this

lawsuit. Dean Roffers sought the assistance of Charles E. Bethel in obtaining financing to enable Roffers, through his company, Dealco, Inc., to purchase the two companies, J. P. Newcomb & Associates and Western Finance Company. Regal Investment Inc., a company controlled by Bethel, owned certain personal property consisting of two fire sprinkler systems installed in a building located in Grinnell, Iowa and two service station equipment packages located in Ottumwa, Iowa. Bethel, Roffers and John E. Watson, president of Masterlease Corporation, negotiated a sale and lease-back arrangement whereby the personal property owned by Regal Investment, Inc. would be sold to Masterlease Corporation for $42,000 and leased back to Regal Investment, Inc. Regal Investment, Inc. then transferred the funds to Roffers' corporation, Dealco, Inc., presumably to establish financing for Roffers' corporate purchases. Apparently, an arrangement was made whereby one of Roffers' corporations would provide Regal Investment, Inc. with the funds necessary to make the periodic payments on the leases of personal property.

Masterlease Corporation sold the property and assigned the leases to Western Finance Company. The lessor's interests were thereafter assigned by Western Finance Company to J. P. Newcomb & Associates. Later, these two companies (Western Finance and Newcomb) borrowed $40,000 from the First National Bank of Lake Wilson using the leases of the personal property as collateral.

Sometime after the loan was made the Bank took an assignment of the leases from J. P. Newcomb & Associates and Western Finance Company in return for cancellation of the indebtedness of those two companies. The Bank now claims to have made the loan and taken the assignment in reliance upon defendants' alleged misrepresentations concerning the validity and value of the leasehold interests.

The Securities Act of 1933 defines a "security" as follows: [1]

> The term "security" means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for security, fractional undivided interest in oil, gas or other mineral rights, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to, or purchase, any of the foregoing.

15 U.S.C. § 77b(1). Plaintiffs' theory is that the leasehold interests which the Bank took by assignment constitute "investment contracts" within the meaning of the statutory language quoted above.

For the purposes of the Securities Act, an investment contract means a transaction "whereby a person [1] invests his money [2] in a common enterprise and [3] is led to expect profits solely from the efforts of the promoter or a third party . . .." *Securities & Exch. Comm'n. v. Howey Co.*, 328 U.S. 293, 299, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). Plaintiffs argue that a "common enterprise" may exist whenever profits depend upon the "continued viability or guarantees of others." Brief for Plaintiff at 10–11. Similarly, plaintiffs contend that the required expectation of profits solely from the efforts of others is satisfied here because the Bank claims to have been "forced to rely solely upon the continued success and viabil-

---

1. The definition of a security under the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10), is virtually the same as that of the 1933 legislation, and, as a practical mat-ter, the coverage of the two Acts may be considered the same. *See Tcherepnin v. Knight*, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed. 2d 564 (1967).

ity of the defendants to assure a continued return on the leases." Brief for Plaintiff at 13.

Our review of the cases defining an "investment contract" indicates that plaintiffs' proposed application of the term to these facts would stretch the meaning beyond its intended effect. Invariably, the cases which have found a "security" to exist in the form of an investment contract have involved situations wherein there has been an investment in an enterprise of some sort where anticipated profits were to be derived from the entrepreneurial or managerial efforts of others. *See, e. g. Securities & Exch. Comm'n. v. W. J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L. Ed. 1244 (1946) (purchasers of units of a citrus grove development sought to share in the earnings and profits of a large citrus fruit enterprise which was managed, controlled and operated by the promoters); *Securities & Exch. Comm'n. v. C. M. Joiner Leasing Corp.,* 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88 (1943) (purchasers of oil lease assignments depended upon sellers to engage in oil exploration and complete the drilling of a test well).

The two cases most heavily relied upon by plaintiffs are clearly not exceptions to this general requirement. In *Securities & Exch. Comm'n. v. Lake Havasu Estates,* 340 F.Supp. 1318 (D. Minn.1972), investors in land purchase contracts were dependent upon the seller's operations for selecting, acquiring, developing, subdividing and reselling land for profit. The case of *Huberman v. Denny's Retaurants, Inc.,* 337 F. Supp. 1249 (N.D.Cal.1972), involved an investment in restaurant property with a lease, where the obvious purchase incentive was the restaurant enterprise. As the court in *Huberman* explained:

> Plaintiff as owner of the building and land not only had the landlord's natural interest in the well being of her tenant but the significant interest in the amount of additional "rent" from the lease that was dependent on the volume of restaurant sales.

*Id.* at 1251.

In the recent case of *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975), the Supreme Court again relied upon the *Howey* definition of an investment contract, and stated that in defining "investment contract" and "security":

> [t]he *touchstone* is the presence of an investment in a common venture premised upon a reasonable expectation of profits *to be derived from the entrepreneurial or managerial efforts of others.*

*United Housing Foundation, Inc. v. Forman, supra,* 421 U.S. at 852, 95 S.Ct. at 2060 (emphasis added).

It seems clear that this entrepreneurial effort involves more than merely a duty to pay money. In the case at hand the Bank purchased a lessor's interests in personal property leases, but there was no investment in the productivity of an enterprise. The Bank obviously sought to obtain some valuable interest, such as regular lease payments, in return for its consideration of debt cancellation, but this is nothing more than the basis of economic exchange which characterizes every form of commercial transaction.

The Bank in this case was not an investor in a common enterprise, and therefore, there is no "investment contract" security as that term is used in the Securities Acts and defined by the Supreme Court. The transaction involved here does not come within the purview of the Securities Act of 1933 and the Securities Exchange Act of 1934.

Therefore, it is ordered that defendants' motion to dismiss for lack of subject matter jurisdiction is granted.