SNYDERS SMART SHOP, INC., d/b/a
Snyders-Chenards, Appellant,

v.

SANTI, INC., Appellee.

No. 1533.

Court of Civil Appeals of Texas,
Corpus Christi.

Oct. 18, 1979.

Rehearing Denied Nov. 29, 1979.

Richard Banks, Salmanson, Smith &
Mouer, Austin, for·appellant.

Thomas G. Sharpe, Jr., Brownsville, for
appellee.

## OPINION

BISSETT, Justice.

This is an appeal from an order overruling a plea of privilege filed by Snyders Smart Shop, Inc., d/b/a Snyders-Chenards, defendant in the trial court and appellant in this Court. Santi, Inc., a Texas corporation, plaintiff in the trial court and appellee here, is domiciled in Cameron County, Texas. Appellant is domiciled in Travis County, Texas. Appellee, in its controverting plea, alleged that venue was in Cameron County under the provisions of Tex.Rev.Civ.

Stat.Ann. art. 1995, §§ 5[1], 7[2] and 30[3] (1964 and Supp.1978), and Tex.Bus. & Comm.Code Ann. § 17.56[4] (Supp.1978).

It is undisputed that the parties entered into a written contract, dated October 31, 1977, whereby appellant agreed to sell to appellee, and the latter agreed to buy from the former, the business assets of a store, owned by appellant, and located in the City of Brownsville, Cameron County, Texas, including all inventory, furniture, fixtures and equipment in the store building, "all accounts receivable attributable to said store," and all layaway merchandise "presently held at said store."

In connection with the sale of the accounts receivable and layaway merchandise which were to be sold to appellee for the sum of $118,000.00, in cash, as adjusted on the date of closing, the contract expressly provided:

". . . It is understood and agreed, however, that, in the event accounts receivable and the unpaid balance of layaways transferred to PURCHASER at time of closing should be less than $118,-000.00, the purchase price will be reduced by any such difference; and if such accounts receivable and unpaid balance of layaway transfers should exceed such sum, the amount of the excess shall be paid by PURCHASER to SELLER at time of closing. It is also understood and agreed that the purchase price for *Hartic (delinquent) accounts receivable of $18,-300.00 (approximately)* (shall be subject to adjustment for a period of six (6)

months following closing, in the event any of such accounts receivable purchased at closing shall thereafter prove to be uncollectible. Delinquent Hartic accounts which are restored to current or acceptable credit status during such six month period shall be accepted by PURCHASER, but such accounts which are not restored to active or acceptable status during such six month period shall be repurchased by SELLER at the end of such six month period.

2. SELLER represents and warrants that SELLER is the owner of and has good and marketable title to all assets covered by this Agreement and that such assets shall be conveyed to PURCHASER at time of closing, free and clear of all liens and encumbrances."

\* \* \* \* \* \*

"12. At the time of closing, SELLER shall furnish to PURCHASER a computer readout indicating the exact unpaid balance of accounts receivable and layaways covered by this Agreement."

The "six-month" period relating to accounts receivable expired on April 30, 1978.

On March 2, 1978, appellee's attorney wrote appellant's attorney concerning accounts receivable in the total amount of $13,791.08, hereinafter referred to as the "*Lozano accounts*," which appellee claims "had previously been turned (by appellant) to Valley Credit Control for collection." In the letter, appellant was advised that appel-

---

1. The pertinent part of art. 1995, § 5, reads:
   "5. Contract in writing—If a person has contracted in writing to perform an obligation in a particular county, expressly naming such county, or a definite place therein, by such writing, suit upon or by reason of such obligation may be brought against him, either in such county or where the defendant has his domicile."

2. Art. 1995, § 7, provides:
   "7. Fraud and defalcation—In all cases of fraud, and in all cases of defalcation by public officers, suit may be brought in the county where the fraud was committed or where the defalcation occurred, or any of such suits may be brought where the defendant has his domicile."

3. Art. 1995, § 30, reads:
   "30. Special venue—Whenever in any law authorizing or regulating any particular character of action, the venue is expressly prescribed, the suit shall be commenced in the county to which jurisdiction may be so expressly given."

4. Section 17.56 of the Business and Commerce Code, provides:
   "§ 17.56. Venue
   An action brought which alleges a claim to relief under Section 17.50 of this subchapter may be commenced in the county in which the person against whom the suit is brought resides, has his principal place of business, or has done business."

lee "never intended to purchase" the Lozano accounts.

On May 24, 1978, appellee's attorney wrote appellant's attorney and told him that the unpaid balance of the "Hartic accounts" (which were the subject of special treatment in the contract) was $17,592.42. The letter further stated:

"In behalf of Santi, Inc., we now tender all of these present accounts, plus all of the Lozano accounts, back to Snyders-Chenards and request immediate reimbursement."

Appellant did not comply with the demand made on it, and appellee filed suit to enforce its demand on October 27, 1978. Appellee, plaintiff in the trial court, alleged:

"II

On or about the 31st day of October, 1977, Plaintiff and Defendant executed a written contract, performable in Cameron County, Texas. A true copy of the contract is made part of this pleading and incorporated herein as Exhibit 'A'."

"III

Defendant agreed to repurchase, on or before April 30, 1978, the remaining delinquent accounts receivable that Plaintiff purchased on October 31, 1977. The Defendant has failed and refused to repurchase the remaining delinquent accounts receivable which Plaintiff originally purchased, although same have repeatedly been tendered to it."

"IV

The Defendant, unbeknown to the Plaintiff, intentionally included accounts receivable in those accounts which Plaintiff purchased pursuant to said written agreement, which were not active or bona fide store accounts and had in fact been previously removed from said store accounts and placed for collection many months prior to October 31, 1977. This deceitful conduct of the Defendant occurred at Brownsville, Cameron County, Texas, and it was fraudulent and deceptive and constituted a breach of the expressed contract and was an unconscionable course of action by Plaintiff."

"VI.

. . . Since the conduct of defendant, acting through its officers, agents and employees, constitutes a deceptive trade action in violation of Section 17.50 of the Business and Commerce Code, the actual damages should be tripled."

We first determine whether venue was proper in Cameron County pursuant to the provisions of Tex.Rev.Civ.Stat.Ann. art. 1995, § 5(a). This section has been construed to require that the written contract expressly state that the obligation is performable at a particular place. The place of performance cannot be implied; it must be expressed. *Saigh v. Monteith*, 147 Tex. 341, 215 S.W.2d 610 (Tex.Sup.1948); *Conner v. Prescon Corporation*, 500 S.W.2d 713 (Tex.Civ.App.—Corpus Christi 1973, no writ). Our review of the contract in this case reveals nothing pertaining to the place of performance, although Cameron County is mentioned several times as the location of the store. See *Traweek v. Ake*, 280 S.W.2d 297 (Tex.Civ.App.—El Paso 1955, no writ). Hence, section 5(a) of article 1995 is inapplicable to the case at bar.

In order to maintain venue under the provisions of section 7 of art. 1995, not only must the cause of action be one sounding in tort and not one for breach of contract or to enforce the provisions of a contract, but the plaintiff must plead fraud and must also prove, prima facie, every constituent element of fraud. *Safeway Stores, Inc. v. Amburn*, 380 S.W.2d 727 (Tex.Civ.App.—Fort Worth 1964, writ dism'd); *Nelson International, Inc. v. Bolin*, 567 S.W.2d 901 (Tex.Civ.App.—San Antonio 1978, no writ); *Banks v. Merritt*, 537 S.W.2d 494 (Tex.Civ.App.—Tyler 1976, no writ). For the elements of actionable fraud, see *Oilwell Division, United States Steel Corporation v. Fryer*, 493 S.W.2d 487 (Tex.Sup.1973).

**170**

We have reviewed the record in its entirety. An examination of appellee's petition convinces us that the main thrust of the action is the enforcement of the contract; the fraud aspect is purely secondary. In view of our holding on the question of whether venue was proper under section 7 of the venue statute, we do not deem it necessary to decide whether the petition alleges fraud. We hold that appellee did not meet its burden of proving, prima facie, all of the elements of actionable fraud. Under those circumstances, venue cannot be maintained in Cameron County under the provisions of Tex.Rev.Civ.Stat.Ann. art. 1995, § 7.

We now consider appellant's contention that venue cannot be maintained in Cameron County by virtue of the Deceptive Trade Practices Act.[5] For that Act's venue provision to apply, a plaintiff must allege a claim to relief under Section 17.50. Section 17.50 provides that a "consumer" may maintain an action under the Act. The Act defines "consumer" as "an individual, partnership, corporation, or governmental entity who seeks or acquires by purchase or lease, any goods or services."[6] We must, therefore, determine whether the appellee is a consumer under the Act. This determination hinges upon whether the obligation out of which the case here presented arose concerned the purchase or lease of goods or services.

The obligation being litigated in the case at bar concerns the purchase of accounts receivable. The Act defines "goods" as "tangible chattels or real property purchased or leased for use."[7] It further defines "services" as "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods."[8] These statutory definitions indicate an obvious legislative intent to exclude the purchase of intangible property from the scope of the Act.

Accounts receivable are clearly a species of intangible property; they do not concern the purchase or lease of goods or services. Thus, appellee failed to state a cause of action under the Act. Venue cannot be maintained in Cameron County, Texas, under Tex.Bus. & Comm.Code Ann. § 17.56 (Supp.1978).

The judgment of the trial court is reversed and judgment is rendered that the cause be transferred to the District Court of Travis County, Texas.

REVERSED and RENDERED.

YOUNG, J., not participating.

---

5. Tex.Bus. & Comm.Code Ann. § 17.56 (Supp. 1979).

6. Tex.Bus. & Comm.Code Ann. 17.45(4) (Supp. 1979).

7. Tex.Bus. & Comm.Code Ann. § 17.45(1) (Supp.1979).

8. Tex.Bus. & Comm.Code Ann. § 17.45(2) (Supp.1979).