**FIRST MUNICIPAL LEASING CORPORATION, Appellant,**

v.

**BLANKENSHIP, POTTS, AIKMAN, HAGIN AND STEWART, A Professional Corporation, Cooper Blankenship, C. Terry Hagin, John A. Stewart, and A.E. Aikman d/b/a Blankenship and Potts, Appellees.**

No. 05–82–00267–CV.

Court of Appeals of Texas, Dallas.

March 16, 1983.

Robert Hager, Peter G. Smith, Dallas, for appellant.

Patrick F. McGowan, Valli Jo Long, Dallas, for appellees.

Before STEPHENS, WHITHAM and GUILLOT, JJ.

WHITHAM, Justice.

The appellant, First Municipal Leasing Corporation, appeals from a summary judgment in favor of appellees, Blankenship, Potts, Aikman, Hagin and Stewart, a Professional Corporation, Cooper Blankenship, C. Terry Hagin, John A. Stewart, and A.E. Aikman d/b/a Blankenship and Potts. The issues involve (1) whether the appellee-attorneys were negligent with respect to an opinion letter, (2) whether the subject of the letter was a security within the meaning of the Texas Blue Sky Law, and (3) whether First Municipal was a "consumer" under the Texas Deceptive Trade Practices Act. We conclude that the trial court correctly granted summary judgment. Accordingly, we affirm.

First Municipal arranged financing for municipal corporations and political subdivisions by purchasing their lease/purchase and installment obligations. After purchase, First Municipal sold such obligations to third party investors. On or about Au-

gust 21, 1978, The System Works represented to First Municipal that it had contracted to sell computer software and hardware to Fort Bend County. First Municipal took an assignment of System Works' right to receive payments from the County. First Municipal paid System Works a fixed sum of money. On August 21, 1978, System Works and the County executed the contract for computer equipment and on that same date System Works assigned and discounted its right to receive payment to First Municipal. On or about September 6, 1978, Richardson Heights Bank and Trust, the third party investor, purchased from First Municipal this right to receive the County's payments. Prior to its purchase, the Bank required that First Municipal obtain a letter from a Texas law firm as to whether or not the contract right and obligation held by System Works was a valid and binding legal obligation of the County. The Bank informed First Municipal and System Works that no money would be transferred to fund the transaction until it received such legal opinion. First Municipal requested System Works to provide it with this legal opinion and System Works employed the Attorneys to provide the opinion. Moreover, First Municipal, as required by the Bank, submitted to System Works the exact wording of the requested legal opinion. The Attorneys knew that such opinion was to be given to a third party. On August 28, 1978, seven days after First Municipal had already become the assignee of the County's contract, the Attorneys submitted to System Works a legal opinion verifying the validity of the transaction between System Works and the County. The letter was addressed and submitted only to System Works by the Attorneys. System Works paid their fees. This letter was subsequently provided to First Municipal and the Bank by System Works. After the entire financing transaction had been consummated it was determined that the County had not lawfully entered into the contract and that the County was not obligated to System Works or the Bank. Following that determination, First Municipal purchased the contract from the Bank and brought this action to recover its loss.

*Negligence.*

First, we consider First Municipal's negligence action. It is undisputed that First Municipal was not a client of the Attorneys and that the Attorneys submitted the opinion letter to its client, System Works, and not to First Municipal or the Bank. First Municipal concedes that under present Texas law an attorney owes no duty to a third party in the absence of privity of contract, citing *Bell v. Manning*, 613 S.W.2d 335 (Tex.Civ.App.—Tyler 1981, writ ref'd n.r.e.); *Bryan & Amidei v. Law*, 435 S.W.2d 587 (Tex.Civ.App.—Fort Worth 1968, no writ); *Traders and General Ins. Co. v. Keith*, 107 S.W.2d 710 (Tex.Civ.App.—Amarillo 1937, writ dism'd). First Municipal contends, however, that although the majority of jurisdictions hold attorneys owe no duty to third parties, the present trend is to the contrary, citing *Roberts v. Ball, Hunt, Hart, Brown and Baerwitz*, 57 Cal. App.3d 104, 128 Cal.Rptr. 901 (1976); *Fickett v. Superior Court of Pima County*, 27 Ariz.App. 793, 558 P.2d 988 (1976); *Parnell v. Smart*, 66 Cal.App.3d 833, 136 Cal.Rptr. 246 (1977); *Biakanja v. Irving*, 49 Cal.2d 647, 320 P.2d 16 (1958); *Woodfork v. Sanders*, 248 So.2d 419 (La.App.1971), *writ denied*, 259 La. 759, 252 So.2d 455; *Donald v. Garry*, 19 Cal.App.3d 769, 97 Cal.Rptr. 191 (1971); *Lucas v. Hamm*, 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685 (1961), *cert. denied*, 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962); *Heyer v. Flaig*, 70 Cal.2d 223, 74 Cal.Rptr. 225, 449 P.2d 161 (1969). First Municipal urges that under the facts of the present case we must adopt the minority view. We decline to do so. To the contrary, we follow the Texas decisions and hold that an attorney owes no duty to a third party in the absence of privity of contract. Therefore, we conclude that the Attorneys owed no duty to First Municipal.

Although we decline to follow the minority view, the final result in the present case would be the same even if we were to do so. We conclude that even if we were to adopt the minority view the non-client First Municipal could not recover for the alleged negligence because it did not rely upon the opinion of the Attorneys. Restatement (Second) of Torts § 552 (1977) provides:

Information Negligently Supplied for the Guidance of Others

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable *reliance* upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

 (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

 (b) through *reliance* upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them. [emphasis added].

In *Home Federal Savings and Loan Ass'n v. Spence*, 259 Md. 575, 270 A.2d 820 (Ct.App.—Md.1970), the client sought to recover damages from his attorney because of alleged negligence. In denying the client recovery the court emphasized the lack of reliance upon the act of the attorney:

We think the law is settled that before an attorney can be held liable, it must appear that the loss for which he is sought to be held *arose* from his failure to discharge some duty which was fairly within the purview of his employment.... and that it must be shown how the plaintiff was deprived of any rights or parted with anything of value, *in reliance* upon the

statements or omissions in his certificate. . . .

270 A.2d at 825 (citations omitted) (emphasis in original). In *Shatterproof Glass Corp. v. James,* 466 S.W.2d 873 (Tex.Civ.App.—Ft. Worth 1971, writ ref'd n.r.e.), reliance was stressed as an element of recovery in an action by third parties against certified public accountants alleging negligence in the preparation of audit reports.

[A]n accountant may be held liable to third parties who *rely* upon financial statements, audits, etc., prepared by the accountant in cases where the latter fails to exercise ordinary care in the preparation of such statements, audits, etc., and the third party because of such *reliance* suffers financial loss or damage.

466 S.W.2d at 880 (emphasis added).

█ In the present case, the undisputed evidence shows that First Municipal could not have relied upon the opinion of the Attorneys since First Municipal took the assignment of the benefits of the System Works-County lease agreement on August 21, 1978, one week before the Attorneys issued their opinion letter on August 28, 1978. We hold that, absent the required reliance, there is no right to recover for the alleged negligence in the present case as a matter of law. We conclude, therefore, that the trial court correctly granted summary judgment because the summary judgment evidence showed the nonexistence of a negligence action in favor of the third party, non-client First Municipal.

### The Texas Blue Sky Law.

Next, we consider First Municipal's contention that the Attorneys in issuing their legal opinion aided and assisted in a sale of a security within the meaning of Tex.Rev. Civ.Stat.Ann. art. 581–4 (Vernon 1964 & Supp.1982–1983) (the Texas Blue Sky Law). First Municipal urges that the legal opinion constituted a false and fraudulent representation in connection with a sale of a security and as such violated the civil provision of Tex.Rev.Civ.Stat.Ann. art. 581–33 (Vernon Supp.1982–1983). First Municipal argues that the transaction in which it acquired the right to receive payments under the terms of a lease between System Works and the County was a "security" because it constituted an investment contract between First Municipal and System Works. The Attorneys contend that the transaction was a simple purchase of rights under a contract for a fixed price in exchange for a fixed consideration, i.e., a simple assignment from one party to another party which is not the type of transaction for which the securities laws were enacted. We agree.

█ The test to be applied in determining whether or not a particular transaction is an investment contract is set forth in *SEC v. W.J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). In *Howey,* the Court set forth a three-pronged test:

In other words, an investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person [1] invests his money [2] in a common enterprise and [3] is led to expect profits solely from the efforts of the promoter or a third party. . . .

328 U.S. at 298, 299, 66 S.Ct. at 1102, 1103 (bracketed numbers added). Although *Howey* dealt with the interpretation of the Federal Securities Acts, this court has held that the decisions of federal courts regarding the definition of "securities" are a reliable guide to the definition of "securities" under the Texas Blue Sky Law because the two laws contain "virtually the same wording." *Wilson v. Lee,* 601 S.W.2d 483, 485 (Tex.Civ.App.—Dallas 1980, no writ). The *Howey* requirements were recently reiterated in *Williamson v. Tucker,* 645 F.2d 404 (5th Cir.1981). In *Williamson,* although reversing a dismissal for lack of subject matter jurisdiction, the court held that promissory notes used to *finance* the sale of property were not investments and therefore were not securities "under *any* reasonable interpretation of our prior cases." 645 F.2d at 428 (emphasis in original).

The notes issued by the plaintiffs were real estate purchase money notes, given to the defendants in exchange for the Property. As in *Sea Pines of Virginia, Inc. v. PLD, Ltd., supra* [399 F.Supp. 708

(M.D.Fla.1975) ], the purpose of the note transaction was to *finance* the sale of the Property, not to sell *investments* to the defendants .... We hold, therefore, that the promissory notes executed by the plaintiffs are commercial in nature and, as a matter of law, are not securities within the meaning of the 1933 Act and the 1934 Act.

645 F.2d at 428, 429. (emphasis in original). We conclude that in the present case the function of First Municipal in this transaction was merely to *finance* the purchase of this computer system for Fort Bend County and that, in the course of this financing transaction, First Municipal purchased the assignment from System Works for a fixed sum and subsequently sold that assignment to the Bank for a fixed sum. We reach this conclusion in light of the three-pronged test in *Howey.*

█ 1. *Investment of money:* We conclude that First Municipal did not "invest" money in this assignment. First Municipal *purchased* the assignment for a fixed consideration. This was an ordinary commercial transaction where something was bought and something was sold. Nothing was "invested"; no risks were taken other than those inherent in any debtor-creditor relationship. First Municipal's own pleadings on file in this cause admit that "Plaintiff would have full unimpaired right to receive payment from said County without the burdens and/or obligations of performance by TSW." In other words, First Municipal paid a fixed sum for the right to receive fixed payments from the County, regardless of the success of the original lease. We conclude that an assignment such as this, for a fixed sum and with no dependence on the efforts of others for success, is not the "investment" contemplated in *Howey.* As observed in *Westchester Corp. v. Peat, Marwick, Mitchell & Co.,* 626 F.2d 1212 (5th Cir.1980):

First, there is no 'common enterprise,' since the fortunes of the investors are not 'interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties.' *SEC v. Koscot Interplanetary, Inc.,* 497 F.2d 473, 478 (5th Cir.1974) (quoting *SEC v. Glenn W. Turner Enterprises, Inc.,* 474 F.2d 476, 482 n. 7 (9th Cir.), *cert. denied,* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973)). The contract in this case simply provided that the purchaser was to pay *fixed sums* at fixed intervals for phases of developed property as available for conveyance from the sellers.... After conveyance of the tracts, the sellers' interest and responsibilities were to cease. This is not the kind of symbiotic relationship where 'the fortunes of all investors are inextricably tied to the efficacy' of common management and promotion. *SEC v. Koscot Interplanetary, Inc.,* 497 F.2d at 479; ....

Second, although the sellers may have been led to expect profits from this transaction, that expectation did not derive 'solely from the efforts of the promoter or a third party.' *SEC v. W.J. Howey Co.,* 328 U.S. at 299, 66 S.Ct. at 1103; *United Housing Foundation, Inc. v. Forman,* 421 U.S. [837] at 854, 95 S.Ct. [2051] at 2061 [44 L.Ed.2d 621]; *Commander's Palace Park Associated v. Girard and Pastel Corp.,* 572 F.2d 1084, 1085–86 (5th Cir.1978); *SEC v. Koscot Interplanetary, Inc.,* 497 F.2d at 477.

626 F.2d at 1215, 1216 (emphasis added). *See also First National Bank of Lake Wilson v. Western Financial, Inc.,* 403 F.Supp. 701 (D.Minn.1975), where the Court found that a transaction whereby a bank took an assignment of leasehold interests in certain items of personal property did not involve a sale or exchange of "securities" where there was no investment in an enterprise where profits were to be derived from the entrepreneurial or managerial efforts of others. In the case at hand the Bank purchased a lessor's interests in personal property leases, but there was *no investment in the productivity of an enterprise.* The Bank obviously sought to obtain some valuable interest, such as regular lease payments, in return for its consideration of debt cancellation, but this is nothing more than the basis of economic exchange which characterizes every form of commercial transaction.

The Bank in this case was not an investor in a common enterprise, and therefore, there is no 'investment contract' security as that term is used in the Securities Acts and defined by the Supreme Court.

403 F.Supp. at 704 (emphasis added).

■ 2. *Common enterprise:* We conclude that First Municipal did not invest in a common enterprise. A common enterprise is "one in which the fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties." *SEC v. Glenn W. Turner Enterprises, Inc.,* 474 F.2d 476, 482 n. 7 (9th Cir.1973), *cert. denied,* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973). In the present case the assignment was purchased by First Municipal and only First Municipal. There was no pooling of investors' resources, no public offering, and no "enterprise" undertaken by anyone other than First Municipal. In the present case there were no other investors whose fortunes were inextricably tied with those of First Municipal.

■ 3. *Expectation of profits to be derived from the efforts of the promoters or a third party:* We conclude that First Municipal had no expectation of profits from this transaction. In *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975), the Supreme Court defined profits as follows:

[E]ither capital appreciation resulting from the development of the initial investment, . . . or a participation in earnings resulting from the use of investors' funds. . . .

421 U.S. at 852, 95 S.Ct. at 2060.

In the present case, there was to be no "capital appreciation" nor "earnings" from this assignment. First Municipal paid a fixed sum in exchange for a fixed consideration. Plaintiff knew from the outset what its "return" was going to be. The amount of the payments from the County were determined from the beginning. That amount, and only that amount, is what First Municipal purchased.

Moreover, we conclude that First Municipal's payments from the County did not depend in any way on "the efforts of the promoter or a third party." *Howey* requires not only that there be an expectation of profit, but that those profits are to be derived from the efforts of others. The court in *SEC v. Koscot Interplanetary, Inc.,* 497 F.2d 473 (5th Cir.1974), put it this way:

[W]e need not feel compelled to follow the 'solely from the efforts of others' test literally.

[W]e hold that the proper standard in determining whether a scheme constitutes an investment contract is . . . 'whether the efforts made by those *other than the investor* are the undeniably significant ones, those essential managerial efforts which affect the failure or the success of the enterprise.'

497 F.2d at 480, 483 (quoting *SEC v. Glenn W. Turner Enterprises, Inc., supra* ) (emphasis added). In the present case, it is undisputed that the compensation First Municipal was to receive under the terms of this assignment was to come directly from the County. The right of First Municipal to receive these payments was totally independent of any efforts of System Works under the original lease. Furthermore, the only way First Municipal could make a profit on this assignment was to make a subsequent assignment to a third party for a higher price than it paid. Such assignment, however, would be the result of First Municipal's efforts and not the efforts of System Works or the County. In a similar case where the purchaser of a joint venture interest in real property purchased the interest for appreciation and ultimate resale, we affirmed the rendition of a summary judgment because the expectations of profit rested upon market inflation and not upon the managerial or entrepreneurial efforts of others and held the transaction was not a "security" under the Securities Act. *Wilson v. Lee,* 601 S.W.2d at 485–487.

Accordingly we hold that in the transaction involved in the present case there was no "investment" by First Municipal, no "common enterprise," and no "expectation

of profits to be derived from the efforts of the promoter or a third party." Thus it follows, and we so hold, that the assignment from System Works to First Municipal of the right to receive payments from the County is not a "security" under the Texas Blue Sky Law. In looking at the "economic realities" of the transaction, as required by *International Brotherhood of Teamsters v. Daniel,* 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979) and *United Housing Foundation, Inc. v. Forman,* 421 U.S. at 851, 95 S.Ct. at 2060, it is apparent that this transaction was not the type of transaction for which the securities laws were enacted. The potential for abuse inherent in investment schemes where a promoter seeks the investment of unsuspecting members of the public simply does not exist in this case. Since this assignment is not a "security," we further hold that First Municipal is not entitled to recover under Tex.Rev.Civ.Stat. art. 581–4, (Vernon 1964 & Supp. 1982–1983) as a matter of law. Thus, the trial court correctly granted summary judgment because this assignment was not the sale of a security within the meaning of the Texas Blue Sky Law.

*Texas Deceptive Trade Practices Act.*

Last, we turn to First Municipal's contention that it was a "consumer" within the meaning of the Texas Deceptive Trade Practices Act, Tex.Bus. & Com.Code Ann. tit. 2, § 17.41–17.63 (Vernon Supp.1982–1983). In the present case, the alleged deceptive acts occurred in August of 1978. Therefore, the Deceptive Trade Practices Act in effect before the 1979 amendments is the Act applicable to this lawsuit. *Riverside Nat. Bank v. Lewis,* 603 S.W.2d 169 (Tex.1980). All references in this opinion will be to the Deceptive Trade Practices Act in effect before the 1979 amendments. Only consumers could maintain an action under Section 17.50(a) of the Deceptive Trade Practices Act. The Act defined "consumer" as "an individual, partnership, corporation, or governmental entity who seeks or acquires *by purchase or lease,* any *goods or services.*" Tex.Bus. & Com.Code Ann. § 17.45(4) (emphasis added).

■ We conclude that First Municipal was not a "consumer." First, it is undisputed that First Municipal neither purchased nor leased the Attorneys' legal services and that these Attorneys received no consideration from First Municipal for such services. Although the Supreme Court of Texas has held that a client of an attorney is a consumer within the meaning of the Act, that holding was based on the fact that the client purchased legal services from an attorney. *DeBakey v. Staggs,* 612 S.W.2d 924 (Tex.1981). In the present case, however, there was no such purchase by First Municipal. In the present case the Attorneys' services were purchased by System Works, not by First Municipal, and System Works was the client.

■ Second, the only thing purchased by First Municipal was the assignment from System Works, i.e., the right to receive payments from the County under the terms of the original lease between System Works and the County. The assignment was an "intangible" and not a "tangible." " 'Goods' means tangible . . . ." Tex.Bus. & Com.Code Ann. § 17.45(1). An intangible such as the right to receive payment under an assignment is similar to accounts receivable which, in *Snyders Smart Shop v. Santi, Inc.,* 590 S.W.2d 167 (Tex.Civ.App.—Corpus Christi 1979, no writ), was held not to constitute "goods or services" under the provisions of the Act. Therefore, a buyer of an intangible was not a consumer within the meaning of the Act:

> These statutory definitions [goods and services] indicate an obvious legislative intent to exclude the purchase of intangible property from the scope of the Act.

590 S.W.2d at 170. Clearly, the assignment of the payment rights under the System Works-County contract was an intangible not covered by the Act.

■ Third, the assignment was purchased for resale and not for consumption. A purchaser of items purchased for resale and not for use was not a consumer under the Deceptive Trade Practices Act. *South Texas Irrigation Systems, Inc. v. Lockwood*

*Corp.,* 489 F.Supp. 256 (W.D.Tex.1980). In the present case the assignment was clearly purchased by First Municipal for resale as evidenced by the assignment to the Bank on September 6, 1978, only sixteen days after the assignment to First Municipal.

Furthermore, even if it could be said that First Municipal was a "consumer," First Municipal was not adversely affected by any actions of the Attorneys. Section 17.50(a) of the Deceptive Trade Practices Act provided that a "consumer can bring a suit if he has been adversely affected" by certain actions specified thereunder. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 541 (Tex.1981); *Guerra v. Brumlow,* 630 S.W.2d 425 (Tex.App.—San Antonio 1982, no writ). The purpose of these provisions was to provide relief for a consumer who had been harmed by deceptive acts or practices. The undisputed evidence in the present case, however, clearly shows that First Municipal could not have been harmed or adversely affected by any actions of the Attorneys which occurred a week after the assignment from System Works to First Municipal. Because of the clear and undisputed evidence that First Municipal entered into the assignment in question before the Attorneys' letter was written, First Municipal was not adversely affected by such letter and did not rely on advice contained therein in making its decision to take the assignment from System Works a week before the letter was ever written. Therefore, First Municipal was not adversely affected by the Attorneys' letter and First Municipal may not recover under the Deceptive Trade Practices Act.

Accordingly, we hold that as a matter of law, the Attorneys are not liable to First Municipal under the Texas Deceptive Trade Practices Act because First Municipal is not a consumer who has been adversely affected by the actions of the Attorneys. Therefore, we conclude that the trial court correctly granted summary judgment in favor of the Attorneys on First Municipal's action under the Deceptive Trade Practices Act.

Affirmed.